(No. 59207.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL LYNCH, SR., Appellant.

*Opinion filed October 19, 1984.—Rehearing denied November 30, 1984.*

RYAN, C.J., and WARD, J., dissenting.

Jed Stone, of Stone & Gromes, of Waukegan, and Mary Robinson, of Palatine, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

Paul Lynch, Sr. (the defendant), shot Lester Howard in the head, and was tried for murder in the circuit court of Lake County. He claimed self-defense; the verdict was voluntary manslaughter. The circuit court, following *People v. Wolski* (1980), 83 Ill. App. 3d 17, excluded evidence of the victim's three convictions for battery, because the defendant was unaware of them when he shot Howard. The appellate court affirmed in a Rule 23 order (87 Ill. 2d R. 23) on a different ground—that the defendant waived the admissibility of those convictions by failing to make an offer of proof (117 Ill. App. 3d 1162). We allowed the defendant's petition for leave to appeal (87 Ill. 2d R. 315), and we now reverse and remand for a new trial.

Much of the evidence was conflicting; we only sketch enough of it to put the legal issues in perspective. The defendant's son, Paul Lynch, Jr. (Junior), is physically and mentally handicapped. One day, apparently without authorization, Junior took Ernest Bell's car and wrecked it. Bell demanded money from the defendant for repairs. Negotiations broke down when the estimates turned out to be more than the Lynches could pay quickly. According to the defendant, Bell was very angry and said he would get his money or kill Junior.

Some time later, the defendant noticed, in front of Junior's apartment, a parked car that Bell had used when he visited the defendant. Fearing for his son's safety, the defendant went to the apartment. He had a gun in his pocket that he had planned to give Junior for protection, but had changed his mind. Junior, Bell, and Lester Howard, a friend of Bell's whom the defendant had seen sitting in Bell's car when Bell left the defendant's home earlier, were discussing the repair problem when Lynch arrived. Bell and Howard were both bigger than the defendant, and both had been drinking. Howard stood blocking the only door to Junior's one-room apartment while Bell paced up and down, the defendant sat on top of a dresser, and Junior on top of a small table. Howard made an angry remark, and the defendant told him that they would deal only with Bell. Howard started toward the defendant, but Bell stepped between them and Howard went back to the door.

About 15 minutes after the defendant arrived, Howard said, "I don't have to sit here and listen to this g------ b------- any further." The defendant testified that Howard lunged forward, reaching behind his back and beneath his coat with his right hand. The defendant thought that Howard was going to shoot him. Bell testified that Howard's hands were in front of him but admitted that he had told the police shortly after the inci-

dent that he did not see Howard's hands. Falling off the dresser, the defendant pulled his gun and shot once at Howard. Then he went to the door, gun in hand, and he and Bell stayed there while Junior and a neighbor went for the police. When the police arrived, the defendant went out to meet them, and Bell appears to have had a few seconds alone in the room with the body. The defendant was arrested. Bell was never searched. No weapon was found on Howard's body.

In his statements to the police and at trial, the defendant admitted the shooting, but claimed that he shot in self-defense. The testimony was conflicting about the progress of the negotiations and about the details of the events just before the shooting.

On cross-examination, defense counsel asked Bell if he was aware that Howard had prior battery convictions. The State objected. The ensuing colloquy outside the presence of the jury established that there were three such convictions, and that the defendant's theory was that Bell brought Howard along for that very reason, as "muscle" to help shake down Junior. Because the defendant was unaware of them when he shot Howard, the circuit judge ruled that the prior convictions were irrelevant and inadmissible.

The convictions were important to the defendant's case, however. They might have affected the jury's judgment of how credible the various versions of the facts were, and they would have helped to complete the picture provided by the testimony. This could have affected the decision as to whether the defendant acted reasonably under the circumstances. Given the state of the law in the appellate court (see *People v. Gossett* (1983), 115 Ill. App. 3d 655, and cases cited therein), we cannot fault the trial judge for his ruling, but it was nevertheless error.

A victim's aggressive and violent character may tend

to support a theory of self-defense in two ways. First, the defendant's knowledge of the victim's violent tendencies necessarily affects his perceptions of and reactions to the victim's behavior. The same deadly force that would be unreasonable in an altercation with a presumably peaceful citizen may be reasonable in response to similar behavior by a man of known violent and aggressive tendencies. One can only consider facts one knows, however, and evidence of the victim's character is irrelevant to this theory of self-defense unless the defendant knew of the victim's violent nature, which is not the case here.

Second, evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened. In this situation, whether the defendant knew of this evidence at the time of the event is irrelevant. If the jurors could see for themselves exactly what the defendant saw at the time, such circumstantial evidence would be unnecessary. However, the evidence of what happened here, as is often the case where self-defense is raised, is both incomplete and conflicting. Everything happened in an instant—during which the defendant, according to his testimony, fell off a dresser while getting out his gun and firing it. The witnesses could hardly analyze the scene in any great detail, or remember and describe it with precision. They could only form quick impressions. To decide what really occurred the jury needed all the available facts, including evidence of Howard's prior convictions for battery.

We hold that when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence, regardless of when he learned of it. (*State v. Miranda* (1978), 176 Conn. 107, 405 A.2d 622; 1A Wigmore, Evidence sec. 63

(Tillers rev. ed. 1983); Annot., 1 A.L.R.3d 571, sec. 8 (1965).) It is consistent with the related rule that a victim's threats against the defendant are admissible even if they were not communicated to the defendant. (*Neathery v. People* (1907), 227 Ill. 110, 116-17.) This case is closely analogous to a threat case, because the defense was trying to show not simply that Howard was a violent man, but also that Bell took him along for precisely that reason. There is little distinction between an inference that someone who has made a threat is likely to do as he threatened and an inference that someone chosen to play a role because he is violent or frightening will behave accordingly.

There was evidence here that Howard was the aggressor, made a threatening remark, and went for the defendant at close quarters, reaching behind his back. The evidence does not exclude the possibility that Howard was reaching for a weapon, which Bell later removed. But even were it clearly established that Howard was not armed, his character would still be relevant to the question of whether he was the aggressor. Conduct not amounting to a deadly assault may nevertheless look like one. The defendant was entitled to have the jury judge the reasonableness of his behavior in light of all the relevant facts.

Convictions for crimes of violence, such as Howard's three convictions for battery, are reasonably reliable evidence of a violent character. Such evidence is ordinarily inadmissible against a defendant for the purpose of proving the offense charged, because the danger of prejudice outweighs the relevance of the evidence where the defendant stands to lose his liberty or even his life if convicted. Where the victim's propensity for violence is in question, however, the danger of prejudice to the defendant lies in refusing to admit such evidence, while its high degree of relevance and reliability remains con-

stant. In this case, therefore, Howard's convictions were admissible for the purpose of proving that he was the aggressor.

The appellate court erred in concluding that the defendant could not attack the exclusion of the character evidence because he had failed to make an offer of proof. The purpose of an offer of proof is to enable the courts to decide the case on adequate facts. As there is no question that the battery convictions could have been proved, we need only decide the legal issue of whether they were admissible. Furthermore, in this case, only the reviewing courts' needs have to be considered, since further details would not have influenced the circuit court, given its view of the law. The requirement of an offer of proof is not a formalistic ritual, but an aid to justice; where justice is not served, no such requirement will be enforced. For example, no offer is required if there was no practical opportunity to make one because of the trial court's hostility. *Giddings v. Williams* (1929), 336 Ill. 482, 489-90.

Similarly, if a question shows the purpose and materiality of the evidence, is in a proper form, and clearly admits of a favorable answer, the proponent need not make a formal offer of what the answer would be, unless the trial court asks for one. (*People v. Moretti* (1955), 6 Ill. 2d 494, 520-21; *Hartnett v. Boston Store* (1914), 265 Ill. 331, 337.) An offer of proof need not provide all the detail of the evidence itself, nor need the proponent expressly point out the natural inferences to be drawn from the proffered evidence. (*Bartholow v. Davies* (1916), 276 Ill. 505, 515.) The appellate court's ruling would be correct in this case, therefore, only if a reviewing court could not fairly determine from the whole record whether excluding the battery convictions was reversible error.

The State's argument is that we do not know enough

about the facts of Howard's batteries to tell whether they were the sort that demonstrate general aggressive propensities. At least one court has said that any battery conviction necessarily does. (*Commonwealth v. Beck* (1979), 485 Pa. 475, 478, 402 A.2d 1371, 1373.) We need not, however, go so far in this case.

The evidence here was to be elicited from Bell, the State's chief witness, and the initial knowledge the defense gained about the convictions came from the State's discovery answer. The State therefore knew as much about the facts as the defense, unless the defendant had made an investigation on his own. In these circumstances, at least, we should not demand that the record provide exhaustive detail; it is enough if, from the record before us, we can say with confidence that the proffered evidence should have been admitted. This is not a case of an attorney disclosing a misleading selection of facts, hoping to slip into evidence a conviction that, were all the facts known, would clearly be inadmissible.

In general, battery is *prima facie* probative enough of aggressive and violent tendencies to be admissible. The rap sheets included in the State's discovery answer show that all three convictions were recent, the last coming only six weeks before the homicide; all were in Illinois, so there is no problem of a strange definition of battery in another jurisdiction. If the State believed that there was nevertheless something so peculiar about the batteries as to make them inadmissible, the State could have asked for further details from defense counsel, or investigated them itself, or questioned Bell, the State's witness, about the details he knew. However, the State did not do that. Nor did it mention that any necessary details of the batteries were missing at any time in the circuit court, although the issue of their exclusion on the ground that the defendant was unaware of them at the time of the homicide was extensively briefed and argued

on the post-trial motion. The State's complaint that there should have been an offer of proof is an afterthought, and wholly academic. The batteries were competent evidence to prove that Howard was an aggressive and violent man.

The State next argues that the circuit court's ruling should be affirmed because Bell was asked about the convictions before any evidence of self-defense was presented. If the State had made this objection in the trial court, the defense could have cured the problem by recalling Bell after the necessary evidence of self-defense was in. Such an objection may not be made for the first time on appeal. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 304-05.) Specific objections so easily cured must be made at the trial, or they are waived. (*Logan v. Mutual Life Insurance Co.* (1920), 293 Ill. 510, 513-14.) It is for this reason that a general objection is regarded as going to the competency of the testimony, and not the form of the question, so that where the testimony sought is pertinent, it is error to sustain such an objection (*People v. Allen* (1941), 378 Ill. 164, 169). To affirm on this ground would punish the defendant for the court's error and for his counsel's failure to perform a futile act.

Essentially the State's argument is that the evidence was inadmissible because offered without a proper foundation. It is true that a defendant may not introduce evidence of the victim's character until some evidence has been presented that the victim was, or appeared to be, the assailant, and that the defendant therefore acted in self-defense. However, the reason for the rule is to ensure that such character evidence is not admitted unless self-defense is at issue in the case. (*People v. Allen* (1972), 50 Ill. 2d 280, 284.) From counsel's opening remarks and from the defendant's statements to the police, which the prosecutor was familiar with, it was clear that self-defense was going to be an issue. In fact, it was

the only contested issue. In such a case, where the evidence will surely be admissible sooner or later, we do not think the State has a right to exclude it solely on the ground of prematurity. The order of proof is within the discretion of the trial judge, who, in the interest of convenience and efficiency, might properly have decided to allow the proof out of the usual order.

It was reversible error to exclude evidence that Howard had three battery convictions. The judgments of the appellate court and the circuit court of Lake County are reversed, and the cause is remanded to the circuit court for retrial on the manslaughter charge. The defendant has, of course, been acquitted of murder.

*Judgments reversed;*
*cause remanded.*

CHIEF JUSTICE RYAN, dissenting:

The primary reason for my dissent in this case is that the record before us just does not support the opinion of the court and is not sufficient to enable this court to decide the issues that have been presented. The opinion assumes, and the defendant argues, that the victim, Howard, had three prior battery convictions. This conclusion is based on the assertion that discovery procedures disclosed these convictions and that the State, as well as the defense counsel, knew of them. This may well be true, but there is not an iota of evidence of the convictions in this record, nor was there an offer of proof concerning any conviction of the victim of the offense of battery. The fact that all of this information may be contained in the lawyer's file is a totally inadequate reason for the holding of this opinion. If we are going to adhere to the adversary system, the case should be tried and decided by the use of accepted adversarial procedures. A court on review should decide the issues before it on the record that has been made through the

use of such procedures. We should not decide a case on review on what the appellant may have had in his file but did not offer in evidence.

The sole basis for this court's opinion is the ruling of the trial court in sustaining the prosecutor's objection to a question by defendant on cross-examination of Bell as to whether the victim had been convicted of battery. As noted below and as stated in the opinion, there are two reasons for offering evidence of this nature. First, such evidence may tend to show that the defendant acted reasonably in using force, in which case it must also be shown that the defendant had knowledge of the victim's prior conduct. Second, such evidence may show that the victim had a violent and aggressive character, which would tend to establish that he was the aggressor. When the judge sustained the objection to the defendant's question on cross-examination concerning the prior battery convictions, the court indicated that its ruling was based on the fact that the defendant did not have knowledge of such prior convictions. If defendant's line of questioning was not being pursued to show the reasonableness of defendant's belief and action, defense counsel could easily have informed the court that the question was not put for that purpose but that he was attempting to establish that the victim had a violent and aggressive character and was therefore probably the aggressor. This he did not do.

I will discuss later that the same evidence may not be admissible for both purposes and that a simple conviction of battery should not be sufficient to establish the victim's character. It was therefore important that the court be informed as to the purpose for which the question was asked and the nature of the battery, if the purpose was to establish the victim's violent and aggressive character.

The objected-to question was asked in a cross-exami-

nation of the prosecution's first witness. There is nothing wrong in asking such a question at that time; however, the proper and appropriate time for a defendant to establish his defense is not during the presentation of the State's case, but during the presentation of the defendant's case. At that stage of the trial, the defendant made no attempt to introduce any evidence of the victim's prior convictions of battery. Thus the court had no opportunity to pass on the admissibility of such evidence. The opinion of this court speaks as though the court denied admission of evidence of these convictions. It did not, because such evidence was never offered. The appellate court properly noted that, after the sustaining of the objection to the question on cross-examination, the defendant did not make any other attempt to prove up the convictions.

As noted above, I agree that there are two purposes for which evidence of the victim's prior conduct may be admitted. However, I feel that the opinion of the court blurs the distinction between these two purposes and may lead to the belief that the same type of evidence is admissible in all cases where the issue of self-defense is involved, regardless of the defendant's knowledge of the convictions. This is not so. There may be evidence of threats and conduct of the victim which, if known to the defendant, would be relevant to the question of the reasonableness of his belief that the use of force was necessary. However, the same threats or conduct may not be sufficient to establish that the victim was a person of a violent and aggressive character. Also, the mere fact that a person has been convicted of a battery is not necessarily evidence of a violent and aggressive character. Nor, if known by the defendant, would it have a bearing on defendant's belief that the use of force was necessary. Such a conviction may arise out of a domestic dispute, or out of charges and countercharges growing out of a

quarrel, and is often entered by default. Under our statute, any physical contact with an individual of an insulting or provoking nature constitutes a battery. (Ill. Rev. Stat. 1983, ch. 38, par. 12—3(a)(2).) Thus, an intended push or a slap may constitute a battery under our statute, but would not be evidence of violent and aggressive character. The opinion of the court, while acknowledging that the Pennsylvania court has held that any battery conviction demonstrates general aggressive propensities (*Commonwealth v. Beck* (1979), 485 Pa. 475, 478, 402 A.2d 1371, 1373), did not go so far as to hold that any battery conviction is admissible for such a purpose, and properly so because of the wide range of conduct which, under the Illinois law, may constitute a battery.

I would hold that before there can be a reversal based solely on the sustaining of the objection to the question on cross-examination of Bell concerning the prior convictions of Howard for battery, defendant would have to inform the court not only of the purpose for which he was trying to show the prior convictions, but also he would have to make a representation to the court as to the nature of the conduct which was the basis for the prior convictions. For the reasons stated herein, I dissent.

JUSTICE WARD joins in this dissent.