2021 IL App (1st) 170764-U

No. 1-17-0764

Order filed February 26, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 5089 |
| | ) | |
| DELVIN JACKSON, | ) | Honorable |
| | ) | Kevin M. Sheehan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.

Presiding Justice Mary Mikva and Justice Maureen Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction and sentence for attempted first degree murder where defendant failed to preserve his claim that the trial court erred in barring his proposed *Lynch* evidence; and we reject defendant's claim of ineffective assistance of trial counsel where: (1) defendant failed to provide authority for his claim that counsel was ineffective for not correcting a mistake of fact, (2) defendant failed to demonstrate he was prejudiced by counsel's failure to recall the victim as a witness, and (3) defendant failed to provide support in the record on appeal for his claim that counsel failed to introduce other instances of violent behavior of the victim.

¶ 2 Following a bench trial, defendant Delvin Jackson was convicted of attempted first degree murder and was sentenced to 10 years' imprisonment.

¶ 3 On appeal, defendant contends that: (1) the trial court abused its discretion when it barred admission of evidence of the victim's violent character in violation of *People v. Lynch*, 104 Ill.2d 194 (1984); (2) he received ineffective assistance of counsel when trial counsel: (i) failed to correct the trial court's misstatement of fact relating to proposed *Lynch* evidence; (ii) failed to recall the victim to testify in the defense's case-in-chief; and (iii) failed to introduce other instances of violent behavior by the victim, which were known to defendant.

¶ 4                                    BACKGROUND

¶ 5                              A. Pretrial Proceedings

¶ 6 Defendant was charged with attempted first degree murder, two counts of aggravated domestic battery, and domestic battery of Carolyn Jones (the victim) stemming from events that occurred on February 23, 2014.

¶ 7 On October 6, 2014, defendant filed a motion serving notice of evidence pursuant to *People v. Lynch*, 104 Ill.2d 194 (1984). The motion provided that defendant intended to claim the affirmative defense of self-defense. Defendant sought to introduce evidence of the victim's past violent behavior to show: (1) defendant's reasonable state of mind in acting in self-defense, and (2) the victim's propensity for violence to demonstrate that she was the initial aggressor. The motion did not specify how the evidence met the requirements for *Lynch*.

¶ 8 According to the motion, defendant sought to introduce evidence of three prior violent incidents involving the victim, in the form of original case incident reports, arrest reports, witness statements, and hospital records. The first incident that defendant sought to introduce into evidence was involving David Poole, who alleged that on July 1, 2013, he and Jones had a verbal altercation.

Afterwards, Jones threw a can of beer at him from her apartment window that struck him in the right shoulder. Jones was arrested and the records division (RD)[1] number was HW343572; the charges were later dismissed.

¶ 9    The second incident occurred on April 15, 2010. At that time, the report indicates that Jones had a verbal altercation with Bryant Mitchell about a cell phone. Mitchell identified Jones as "Catheryn," with an unknown last name. During the argument, Jones struck Mitchell in the stomach with a box cutter, resulting in a laceration to his stomach. Jones was arrested and the RD number for this incident was HS 259512; the charges were later dismissed.

¶ 10    The third incident occurred on June 19, 2008, when Jones had a verbal altercation with Wilburdean Moore. During the altercation, Jones struck her "with an open hand" and then pushed her in an attempt to flee. Jones was arrested and the RD number for this incident was HP 403760; the charges were later dismissed.

¶ 11    On December 4, 2014, the Appellee, The People of the State of Illinois (State), responded to defendant's motion to introduce *Lynch* evidence. The State noted that none of the evidence sought to be introduced resulted in any misdemeanor or felony convictions to support defendant's contention that Jones has a violent or aggressive character. The State argued that defendant's motion failed to satisfy the two-pronged test under *Lynch*. For the first prong, defendant provided specific incidents regarding Jones. However, defendant failed to state what he knew about each incident at the time of the crime in accordance with *Lynch*. For the second prong, the State argued that not only did the defendant fail to allege, but there was in fact no conflicting evidence available as required under *Lynch*. As such, the State filed a motion to deny the defendant's motion.

---

[1] The record division number is a specific identifier for a person's arrest, used in respect to the assigned case.

¶ 12    On March 8, 2016, defense counsel argued the motion for admission of evidence under *Lynch*. Counsel argued that defendant was present when Jones was arrested for the November 2013 incident; at that point, defendant had known Jones for approximately two weeks. Additionally, defense counsel noted that defendant was with her when she committed many acts of violence against members of the neighborhood, however, none of these acts were documented. Defendant had no personal knowledge of the 2008 or 2010 incidents. Defense counsel conceded that the first prong, which required personal knowledge, was not applicable because defendant had no personal knowledge of those two incidents. For the second prong, defense counsel acknowledged at the hearing that no conflicting accounts had occurred in this case up to that point. However, the defense wanted to introduce this information in anticipation of Jones' testimony and to give notice that he was aware of her propensity for violence.

¶ 13    In response, the State reiterated that defendant had not established either prong of *Lynch*. As to the first prong, defendant had no personal knowledge of any of the incidents and was only present when Jones was arrested for the November 2013 incident. None of the charges resulted in a conviction. The State further noted that the offender in the 2010 incident did not have the same name as Jones. Specifically, the assailant was identified as "Catheryn," with an unknown last name, not Carolyn Jones. Lastly, the incidents proffered were too remote in time.

¶ 14    With respect to the second prong, the State argued that nothing presented established that Jones was the initial aggressor in defendant's case, and that information would be unknown until defendant testified. The State requested that the other victims testify, otherwise the evidence should not be admitted because it was hearsay.

¶ 15    With respect to the State's contention that the offender in the 2010 case had a different name, defense counsel pointed out that the 2010 case referred to Jones using the same identification

record (IR) number[2] as in all her other arrests. He surmised that while the victim in that case was mistaken as to Jones' first name, there is no doubt that Jones was arrested and the same IR number was used for "Catheryn" Jones as for Carolyn Jones herein.

¶ 16    On March 9, 2016, the trial court ruled on the competing motions, determining that the 2013 incident was viable as possible *Lynch* material. The trial court noted that this evidence would only be admitted if in fact a threshold was met by the defense of establishing self-defense. The trial court then found that the 2008 and 2010 incidents were inadmissible because they were too remote in time, and that the 2010 incident named another person as the offender.

¶ 17                                B. Trial Proceedings

¶ 18    On July 20, 2016, defendant's bench trial commenced.

¶ 19    Jones testified that she met defendant in November 2013. In the beginning of 2014, as they became better acquainted, she invited him to her apartment at 416 West 70th Street in Chicago, along with other friends. She and defendant began an intimate relationship and she allowed him to stay over for three weekends in a row. At the conclusion of the three weeks, she determined she was not attracted to defendant. Afterwards, defendant continued to keep in contact and text her.

¶ 20    On February 22, 2014, defendant texted Jones and she responded. Later that evening defendant came to her apartment and she let him in. Defendant had a bike and backpack containing alcohol. They drank alcohol and slept on her couch that night.

¶ 21    On February 23, 2014, defendant drank alcohol while Jones stayed in her room and she notified defendant that she would be going to church. At one point, a downstairs neighbor named Jonas came upstairs. Defendant and Jonas went to the liquor store, leaving Jones alone in the

---

[2] The identification record number is given the first time a person is arrested and each subsequent arrest will reflect this identification record number.

apartment. She gave defendant money for her own alcohol. When defendant returned, he had a knife in his pocket and was carrying the alcoholic beverages. While she was drinking, another neighbor came over named Toya. Jones started watching a movie while the others played a card game and listened to music. Defendant began to make remarks about the movie and Jones asked him to not tell the plot of the movie out loud.

¶ 22    At the end of the movie, "drinks were low," and everyone left except defendant who turned the music up and started dancing. As he was dancing to the music defendant stated, "[y]ou probably don't have $200. You don't want to sleep with me? You probably don't have $200 on you." Shortly thereafter defendant said, "I'm about to beat your ass." He then hit Jones in the face, knocking her drink out of her hand. He continued to hit her in the face repeatedly as she attempted to shield herself. She fell down and defendant dragged her from the bedroom to the kitchen causing her to scrape her knee. When they arrived at the kitchen, he picked her up and slammed her into the refrigerator. He began to continue to hit her in the face and she felt her teeth being "knocked out." Defendant then threw Jones, which caused her to knock over her dishes in the process. While she was knocking over the dishes, she tried to find something to defend herself with. Jones landed against the kitchen door, with her back facing defendant. Defendant then said, "I'll show you what I did to the last bitch." She then heard a, "boom, boom, boom." She felt a big pinch under her left shoulder and was unable to breath. She turned her head to see that defendant's pocketknife was in her back. Defendant tried to pull the knife out of her. For about 10 to 15 minutes, defendant remained, trying to decide if he should continue to try to take the knife out. Eventually, after Jones pleaded with him, he let the knife go and said, "you can keep it."

¶ 23    Jones pleaded with defendant to call 911 and told him she was dying. Defendant ran to the refrigerator, grabbed some beverages, grabbed his belongings, and left. Jones went to a neighbor,

Sade Pearson, for help. Jones couldn't really speak but pointed to the knife in her back and indicated that defendant stabbed her. Pearson did not have a phone, but subsequently located one and called 911. The 911 recording was played for the court. While talking to 911, Jones was screaming in pain. She had to lay down on the stairs because she "felt like she was dying." Jones identified State's exhibit number two as the knife that was removed from her back.

¶ 24    The police and paramedics arrived shortly thereafter, and Jones was taken to the hospital, where she remained for five days. Jones sustained a punctured lung and blood in her lungs. She required surgery and was placed on a ventilator. It took nine months for her to heal physically and she continued to suffer anxiety attacks as of the time of the trial.

¶ 25    On cross-examination, Jones clarified that defendant slept on her couch in her living room while she slept in her bedroom on the night he arrived. She did not recall asking him to leave and characterized the interaction that led to him being physical, as a disagreement.  She further denied calling defendant a "broke ass," pushing, or touching him.

¶ 26    Defense counsel then asked if it was true that she was arrested in connection with an incident that involved her throwing a beer can out of the window. The trial court intervened and noted that it was improper to question Jones regarding this incident until self-defense was initiated on the defense side. Therefore, the question was stricken from the record.

¶ 27    Jones further testified on cross-examination, that when defendant was talking about money, she was in her bedroom and retrieved the money to show him. When she went to put her money back, she walked towards the door to her bedroom and thought everything was settled. It was then that defendant stated he was going to beat her and began to charge at her. She did not fight back. When she was taken to the kitchen, she tried to find something to fight back with; she was not

solely looking for a knife. During the 10 to 15 minutes that the defendant's knife was in her back and defendant remained in the apartment, she did not call the police.

¶ 28    Officer Mario Tapia testified that when he and his partner arrived at the scene on February 23, 2014, he heard screaming. They made their way down a second floor stairwell of the multiunit apartment where he saw Jones lying on the steps with a knife in her back with only the handle sticking out. Officer Tapia identified State's exhibit number two as the knife that was in Jones' back. He told Jones not to move until the ambulance arrived. His partner questioned her about what occurred. She identified defendant as the perpetrator. Officer Tapia then went to what he believed to be her apartment to see if defendant was still there but was unable to find defendant.

¶ 29    Officer Alex Coan testified that on February 23, 2014, he and his partner were on patrol near 500 West 69th Street when they received the name and description of defendant as the suspect in a stabbing. They subsequently stopped an individual who was riding a bicycle, matched the description of the offender, and identified himself as Delvin Jackson. Since his name matched the information they were provided for the suspect, they took him into custody. Officer Coan identified defendant in court as the person he arrested on February 23, 2014.

¶ 30    The State sought admission into evidence of defendant's certified copy of conviction for domestic battery under case number 12 DV 51058. The trial court admitted it without an objection by the defense. The State then rested its case.

¶ 31    The defense called David Poole as a *Lynch* witness. Poole testified that he knew Jones for approximately three to four years at the time of the incident. He ran a shop in the basement of the multiunit building where Jones lived. On July 1, 2013, Poole recalled asking Jones to stop throwing garbage from her third floor window into the vacant lot. He knocked on her door and told her if she just left the garbage, he would take it the dumpster. Jones responded by yelling at him and

telling him what she would do to him. Specifically, she told him she would "bust his head." Poole stated that she knew he had recently had brain surgery. Poole left and began picking up the garbage around the building. Jones opened her window, began cursing at him and threw a full can of beer at him. The can hit him in the shoulder, but he was not injured. Poole then called the police.

¶ 32    On cross-examination, Poole testified that he did not go to court but had every intention of pressing charges.

¶ 33    On re-direct examination, Poole testified that Jones "stayed drunk."

¶ 34    Defendant testified that he and Jones never had a dating relationship. On February 22, 2014, he called Jones and asked if she wanted some company and she responded yes. He arrived around 8 or 9 p.m. and had a bottle of alcohol with him. Jones let him in and they both drank alcohol. She fell asleep in her bedroom while he slept on the couch. The next day defendant went to the store with Jones' neighbor, Jonas, to buy more alcohol. Jones gave Jonas $3 for beer.  After they returned from the store, defendant retuned to Jones' apartment and gave her the beer that Jonas bought while Jonas went back to his apartment.

¶ 35    Both Jones and defendant began to drink. Jones asked defendant what happened to her can of beer and he responded that she did not give him any money for one.  She called him derogatory names and told him to get out. Defendant headed towards the kitchen to get his bike while Jones was in the hallway of her apartment. As he was leaving, she began calling him names and shoved him in the hallway. He then told her to not shove him anymore and to leave him alone and then she shoved him again. He did not hit her back, but he did push her to get her off of him.

¶ 36    After defendant pushed Jones off of him, she ran to the kitchen and retrieved a 12-inch knife from the counter. He also walked towards the kitchen to get his bike so he could leave. After grabbing the knife, she turned around and tried to stab him. Defendant blocked her with his left

hand, and he removed his knife from his pocket and told her to "get off of him." Defendant then stabbed her in the shoulder. Jones still had her 12-inch knife in her hand and never stopped struggling with him. She then ran downstairs to a neighbor and told them that he stabbed her while continuing to call him derogatory names. Defendant went downstairs to explain to the neighbors what happened. When Jones asked the neighbor to call 911, he left. Defendant stated that he was never violent with Jones in any way before she became physical with him. He was in fear of his life or of being hurt by her.

¶ 37    On cross-examination, defendant testified that he had hung out with Jones at her house and sometimes slept over. He played cards with her neighbor Toya, on Friday, not on the day of the incident, and denied that Jones watched a movie.

¶ 38    Defendant testified on cross-examination, that when he got back from the liquor store, he told her he had $200 in his wallet. Jones went to her bedroom to get her wallet. Eventually they began arguing in her hallway. At no point did he drag her to the kitchen. Instead, Jones ran to the kitchen to get a butcher knife from the counter. At the same time, defendant entered the kitchen to retrieve his bike. After Jones tried to stab defendant, he stabbed her in the shoulder, not the back, in an act of defense. Defendant admitted that he observed Jones struggling and never called 911. After trying to explain what happened to the neighbors, he went to get his belongings from Jones' apartment and left. Defendant sustained no injuries from the altercation with Jones.

¶ 39    On redirect examination, defendant testified that Jones was larger than him and he only shoved Jones after she shoved him. Jones then ran to the kitchen and grabbed a 13-inch butcher knife off the counter. Defendant insisted on redirect that it was 13 inches long, not 12 inches as he previously testified. He blocked her from stabbing him and he stabbed her in the shoulder.

Defendant stated that they each had a knife when he stabbed her. The defense rested after defendant's testimony.

¶ 40    In rebuttal, the State introduced a certified copy of defendant's convictions for involuntary manslaughter and aggravated battery in case number 09 CR 17530. The trial court found the sentence to be immaterial, and the State subsequently rested in rebuttal.

¶ 41    In finding defendant guilty, the court noted that the victim's testimony wasn't perfect, however, she testified to the facts in the case. The trial court found that defendant was impeached on a few things: by "first admitting things, then denying things," his prior felony convictions, and by stabbing the victim and fleeing without calling 911 and explaining himself.  Defendant was found to be "absolutely incredible, self-serving and unbelievable." The trial court found defendant guilty on all charges.

¶ 42                              C. Posttrial Proceedings

¶ 43    On February 9, 2017, defendant filed a motion for a new trial. In his motion, defendant argued that he was not proven guilty beyond a reasonable doubt, the finding was against the weight of the evidence, he was denied due process and equal protection of the law, the State failed to prove every material allegation of the offense beyond a reasonable doubt, he did not receive a fair and impartial trial, the trial court erred in overruling his motion for a directed verdict, and the finding is based upon evidentiary facts which do not exclude every reasonable hypothesis consistent with his innocence.

¶ 44    On March 8, 2017, the hearing for a new trial was held. Defense counsel stood on its motion and withheld argument. In response, the State argued that defendant had a fair trial, the State provided several witnesses, and the victim testified credibly.  Ultimately, the trial court found that defendant was found guilty beyond a reasonable doubt and denied the motion.

¶ 45     The case then proceeded to a sentencing hearing, where the State presented evidence in aggravation. Defendant presented evidence in mitigation but did not speak in allocution.  The court then merged the two counts of aggravated domestic battery and the domestic battery charge into the attempted murder charge. Based thereon, defendant was subsequently sentenced to a 10-year prison term for attempted first degree murder.

¶ 46                                         ANALYSIS

¶ 47     On appeal, defendant contends that: (1) the trial court abused its discretion when it barred admission of evidence of Jones' violent character pursuant to *People v. Lynch*, 104 Ill.2d 194 (1984); (2) he received ineffective assistance of counsel when trial counsel: (i) failed to correct the trial court's misstatement of fact relating to the proposed *Lynch* evidence; (ii) failed to recall Jones to testify in the defense's case-in-chief; and (iii) failed to introduce other instances of violent behavior by Jones which were known to defendant.

¶ 48                                 A. *Lynch* Evidence

¶ 49     Defendant contends that the trial court's denial to admit evidence of Jones' violent character was in violation of *Lynch*. Next, he argues that trial court's determination that the incidents that occurred in 2008 and 2010 were too distant in time was an abuse of discretion. Lastly, he contends that the trial court made a mistake in fact when determining that the 2010 incident involved another person by the name of Catheryn, to wit: although the victim misstated Jones' name, there is no dispute that it was Jones because of the related IR number.

¶ 50     Defendant did not include this claim in his posttrial motion. In order to preserve an issue for appeal, defendant must raise an objection at trial and include the objection in a posttrial motion. *People v. Bui*, 381 Ill. App. 3d 397, 405 (2008). If a defendant fails to provide this, the issue is forfeited. *Id*. Although defendant provides both the motion for *Lynch* evidence and motion for new

trial, the motion for a new trial does not include the issue he is seeking to have reviewed on appeal; defendant has not properly preserved this claim. *Id.*

¶ 51     Defendant contends that this court may review this issue using the plain error doctrine. Under the plain error doctrine, "issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." *Bui*, 381 Ill. App. 3d at 405-06.

¶ 52     The first step in reviewing for plain error is determining whether there was any error at all. *Bui*, 381 Ill. App. 3d at 406. Here, the trial court determined that Jones' 2008 and 2010 arrests were too distant in time, these events occurred six and four years, respectively, before this case. Defendant contends that the amount of time is not too distant. In support of defendant's argument, he cites to the findings in *Ellis*. In *Ellis*, this court held that a conviction over 10 years belonging to a victim, may be excluded from being admitted. *People v. Ellis*, 187 Ill. App. 295, 301-02 (1989). Defendant is correct, none of the arrests defendant sought to enter into evidence were over 10 years old. However, *Ellis* is distinguishable from this case because, here, defendant sought to have Jones' arrests admitted into evidence, not convictions. Further, *Ellis* also held that it was proper to exclude evidence of an arrest where there was no conviction. *Id*. at 301. Given that the evidence defendant sought to enter into evidence were only arrests, it cannot be said that the trial court's denial was an error. The trial court also noted that the 2010 incident had another name other than Jones' on it. Therefore, we find that there was no error when the trial court excluded

this proposed *Lynch* evidence. *Bui*, 381 Ill. App. 3d at 406. Hence, this court is unable to review defendants claim under the plain error doctrine.

¶ 53                    B. Ineffective Assistance of Counsel

¶ 54    Defendant contends defense counsel was ineffective for: (1) failing to correct the trial court's mistake of fact regarding Jones' 2010 arrest; (2) failing to recall Jones in the defense's case-in-chief regarding the 2013 incident; and (3) failing to make an offer of proof regarding defendant's personal knowledge of Jones' other violent acts.

¶ 55    When a defendant raises the claim of ineffective assistance on appeal and it requires the consideration of matters beyond the record on appeal, the appellate court may properly decline to adjudicate the matter. *People v. Burns*, 304 Ill.App.3d 1, 11 (1999). Defendant's third contention that defense counsel was ineffective for failing to make an offer of proof regarding defendant's personal knowledge of Jones' other violent acts, is not supported by the report of proceedings on appeal.  No details as to defendant's personal knowledge of Jones' other violent acts is available in the report of proceedings. Nor is there evidence that this information was told to counsel at any time. This court will decline to review this unsupported claim. *Id.*

¶ 56    In reviewing defendant's remaining claims of ineffective assistance of counsel, this court follows the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced defendant. *Id.* For the first prong, to show deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001).  Additionally, for the second prong, defendant most also show that, but for this deficiency, there exists a reasonable probability that counsel's performance prejudiced the defendant. *Id.*  A "reasonable

probability" is a probability which would be sufficient to undermine confidence in the outcome of the trial. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 11. The failure to satisfy both prongs precludes a finding of ineffective assistance of counsel. *Id.*

¶ 57    Effective assistance of counsel means competent, not perfect representation. *Thomas*, 2017 IL App (4th) 150815, ¶ 10. The ultimate question of whether counsel's actions support a claim for ineffective assistance of counsel is subject to *de novo* review on appeal. *People v. Max*, 2012 IL App (3d) 110385, ¶ 64.

¶ 58    Defendant contends that the identity of the person in the 2010 case associated with the RD HS 259512 could have been resolved if trial counsel referred to the IR number of the person arrested on that RD. The name of the person on the arrest report listed as the assailant belongs to a Catheryn, with an unknown last name.   He asserts that if defense counsel had simply looked at the associated IR number, it would have shown this to be the victim, Carolyn Jones. IR number 1935724, is associated with all three RD numbers that were sought to be entered in as *Lynch* evidence. Lastly, defendant contends that when the trial court made the comment that the two names did not match, defense counsel should have corrected the trial court by explaining that the IR numbers did match.

¶ 59    Defense counsel has the right to make the ultimate decision when it comes to trial strategy, exercise of judgment, discretion, and trial tactics. *People v. Ramey*, 152 Ill. 2d 41, 54 (1992). The record shows the State made the initial argument that the 2010 case associated with RD HS 259512 belonged to someone other than Carolyn Jones. However, defense counsel subsequently explained to the court that IR number 1935724 matched with Jones' other arrests. The trial court made further reference to the uncertain identity of the person in the 2010 case later in the trial, but defense counsel did not correct it.  The record does not indicate why defense counsel did not repeatedly

correct the trial judge each time he failed to acknowledge the matching IR numbers, and we will not make any such assumptions. We have no way of knowing whether defense counsel's actions were a result of legal strategy, lack of alternatives, or simply poor performance. See People v. Durgan, 346 Ill. App. 3d 1121, 1142 (4th Dist. 2004), *citing* Guinan v. United States, 6 F.3d 468, 473 (7th Cir. 1993). As such, we cannot find that defense counsel's actions fall below an objective reasonableness expected from an attorney. *Hickey*, 204 Ill. 2d at 613.

¶ 60    Assuming arguendo, even if defense counsel had corrected the trial court each time he referred to some other person being associated with the 2010 case, nothing suggests that the outcome would have been different. Aside from the issue of identity, the trial court also determined that both the 2008 and 2010 arrests were too remote in time, and thus, the arrest would have still been excluded. Hence, defendant has failed to demonstrate how he was prejudiced by counsel's failure to correct. *Thomas*, 2017 IL App (4th) 150815, ¶ 11.

¶ 61    Next, defendant contends that trial counsel was ineffective for failing to recall Jones in the defense's case-in-chief, to be questioned about the 2013 incident. The trial court informed defense counsel that it would not admit *Lynch* evidence prior to the commencement of the defense's case-in-chief. Therefore, in order for Jones to testify about the *Lynch* evidence, it would have to have been after defendant alleged self-defense. While Jones was called as a State witness, on cross-examination, defense counsel proceeded to question Jones about the *Lynch* evidence. Specifically, defense counsel asked, "isn't it true that you were arrested regarding an incident of a beer can being thrown out a window." The trial court intervened, and defense counsel stopped the questioning and never recalled Jones as a witness for the defense. Defendant contends that defense counsel could have simply subpoenaed Jones to testify again, and her failure to do so constitutes a deficient performance, especially when the case boils down to credibility. Defendant contends that

if Jones was recalled to testify about her past violent behavior, the trial court could have made a different determination.

¶ 62    The determination of whether to call a witness is generally a matter of trial strategy. *People v. Elder*, 73 Ill.App.3d 192, 203 (1979). At trial, Poole testified to asking Jones to not throw garbage out of her window, this appeared to anger Jones. Jones threw a full can of beer from her third floor window. The can hit Poole on the shoulder, narrowly missing his head, which Jones knew he had undergone surgery on. The testimony provided, described Jones' actions in a very poor light. Having Poole testify to his damming version of events and not recall Jones, could have been trial strategy. To have Jones recalled to testify and potentially provide testimony that denies the events occurred the way Poole described, could have backfired for defendant. Defense counsel's failure to recall Jones can be considered trial strategy that does not fall below the objective reasonableness expected from an attorney. *Id.*

¶ 63    Defendant contends he was prejudiced because if the trial court heard Jones' testimony it is possible that it would have found her to be less credible. In order to demonstrate prejudice a defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hickey*, 204 Ill. 2d at 613. Although testimony from Jones about her previous arrest could potentially make her less credible, there remains the evidence that was produced at trial. The evidence at trial showed that both defendant and Jones had demonstrated violent behavior in the past. Defendant contends the evidence at trial was a matter of judging the credibility of just Jones and himself. Jones testified that she was stabbed in her back as she laid on the back door of her kitchen. In contrast, defendant's account has him blocking her attack and simultaneously stabbing her on her shoulder, not the back. However, Jones' account is consistent with the observations of responding Officer Tapia, who

testified to observing a knife in Jones' back. This adds credibility to Jones' account and further indicates that this is less likely a matter of self-defense when Jones was attacked from behind. Even if Jones were called to testify about her arrest, it is unlikely the proceedings would have been any different. *Id*. Defense counsel failing to recall Jones, does not amount to ineffective assistance.

¶ 64                                   CONCLUSION

¶ 65     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 66     Affirmed.