NOTICE

Decision filed 10/12/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190447-U

NO. 5-19-0447

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-CF-2848 |
| | ) | |
| HUBERT D. HILL, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where no meritorious contention exists that defense counsel operated under a conflict of interest, defendant was not proved guilty beyond a reasonable doubt, the defense was not allowed to present sufficient evidence of the victim's violent nature, defendant's sentence was an abuse of discretion, and the trial court erred in denying defendant's motion for a mistrial, we grant defendant's appointed appellate counsel leave to withdraw and affirm the trial court's judgment.

¶ 2    Following a jury trial, defendant, Hubert D. Hill, was convicted of aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2018)) and sentenced to 10 years' imprisonment. He appealed and the trial court appointed the Office of the State Appellate Defender (OSAD) to represent him.

¶ 3    OSAD has filed a motion to withdraw as counsel and a supporting brief, concluding that this appeal lacks even arguable merit. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has provided defendant with copies of its motion and brief. This court has allowed defendant ample

1

time to file a response explaining why the appeal has merit, but he has not done so. Having read OSAD's *Anders* motion and brief and examined the record on appeal, we conclude that the appeal does indeed lack merit. There is no potential ground for appeal. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                      BACKGROUND

¶ 5      Defendant was charged with aggravated battery after he allegedly stabbed Brian Garrison. Prior to trial, defendant filed a *pro se* motion to discharge appointed counsel, alleging that he had filed a malpractice complaint against him. Defendant requested a new attorney but continued to file *pro se* motions, one of which sought the appointment of counsel. The trial court granted the motion and reappointed the public defender's office. Defendant's original trial counsel was reassigned to the case. Counsel noted that many of defendant's *pro se* motions related to discovery issues and, accordingly, counsel filed an "Omnibus Motion for Discovery" seeking to consolidate and resolve all pending issues in that regard.

¶ 6      Later, the State moved *in limine* to introduce defendant's prior convictions involving the use of a knife. The defense opposed the State's motion while filing its own motion to introduce evidence of Garrison's propensity for violence in support of its contention that defendant acted in self-defense.

¶ 7      The defense sought to use five specific examples of Garrison's violent and aggressive behavior. The motion alleged that in 2002, Garrison attacked a police officer with a weapon. In 2005, he knocked on Julie Britton's door and pulled a knife from his pocket. Later, Britton found that her phone lines had been cut. A Granite City police officer who responded to the incident would testify that Garrison disobeyed his order to drop the knife and resisted arrest before being taken down. In 2011, Garrison was convicted of unlawful possession of a weapon by a felon. In

2

2012, Garrison pleaded guilty to retail theft in exchange for the dismissal of three aggravated-battery charges. One battery charge alleged that, in attempting to avoid apprehension, Garrison shoved a store employee to the ground. Finally, in 2019, Garrison, while drunk, caused a disturbance at an Amtrak station in Carbondale. Charges resulting from that incident were pending.

¶ 8     Following a hearing, the trial court allowed defendant to present evidence concerning the 2012 and 2019 incidents. The court found that the 2005 incident did not involve violence. In addition, the 2002 and 2005 incidents were simply too remote in time. The court declined to allow evidence of the 2011 incident because caselaw established that unlawful possession of a weapon was not evidence of violent tendencies.

¶ 9     At trial, Garrison testified that he gave defendant $160 to purchase methamphetamine for him. When defendant failed to return with the drugs, Garrison sought to confront him. He bought alcohol and sat on the steps of a church waiting for defendant to pass by. Garrison had two pocket knives that he carried for self-defense. At some point, however, he took them out and placed them on the church steps.

¶ 10     When Garrison finally saw defendant, he approached him and attempted to kick him, but defendant easily avoided the blow. The parties soon calmed down and had a conversation. Garrison denied that it was "loud." At some point, defendant told him to sit down. Garrison thought that they talked for 15 to 20 minutes but could not remember exactly what they talked about. Garrison did not remember having any physical contact with or threatening defendant. The conversation ended with defendant stabbing him.

¶ 11     Kurt Moore witnessed the incident from his home across the street. He also video-recorded the incident on his cell phone. The recording, which showed defendant yelling at Garrison and

3

eventually stab him without apparent provocation, was played for the jury. Moore said that Garrison did not display a weapon or attempt to make physical contact with defendant.

¶ 12 Tammy Brewner, who lived down the block, also witnessed the incident. She was outside with her children when she heard two men arguing down the block. After taking her children inside, she continued to observe the situation outside. Although the argument escalated, it cooled off at some point and the two men sat down and talked. Shortly thereafter, however, the two men got up again and defendant stabbed Garrison. Brewner never saw Garrison with a weapon and he never made physical contact with defendant. She did not hear Garrison threaten defendant.

¶ 13 Officer Jacob Dailey responded to the scene, where he found Garrison covered in blood. Garrison said that "Hubert" had stabbed him. Dailey did not see Garrison with any weapons.

¶ 14 Another officer, Brandon Shellenberg, testified that he located a suspect—defendant— matching the description of the assailant and arrested him. Nearby, Shellenberg located defendant's backpack, in which he found a bloody knife.

¶ 15 The prosecutor showed Shellenberg a knife and asked if it was the one he found in defendant's backpack. Shellenberg said that it was not his. At a sidebar, the prosecutor informed the court that the police had brought over the wrong knife. The court denied defendant's motion for a mistrial. The court noted that the situation was a defense attorney's "dream" and that the defense was free to exploit the mix-up on cross-examination.

¶ 16 Carbondale police officer Andrew Sabens testified for the defense that in 2019 he was called to the Amtrak station in Carbondale for a report of a belligerent patron, Garrison, who was refusing to get off of a bus. After being forcibly removed from the bus, Garrison refused to leave the scene and approached Sabens with his right hand raised. Sabens, who felt threatened,

4

restrained Garrison and placed him in handcuffs. Even so, Garrison continued to struggle with the officers.

¶ 17    Shirley Chambers testified that she worked at a Rural King in 2012. One night a shoplifter, Garrison, was apprehended. As he attempted to escape, he knocked Chambers to the floor.

¶ 18    The jury found defendant guilty. After denying his motion for a new trial, the court sentenced him to 10 years' imprisonment, the maximum extended term for aggravated battery. Defendant timely appealed.

¶ 19                                                    ANALYSIS

¶ 20    OSAD identifies five potential issues on appeal but concludes that none has even arguable merit. We agree.

¶ 21    The first potential issue is whether defense counsel operated under a conflict of interest because defendant had a pending civil suit against him. We agree that this issue lacks arguable merit.

¶ 22    The sixth amendment right to effective assistance of counsel includes a right to conflict-free counsel. *People v. Johnson*, 227 Ill. App. 3d 800, 811 (1992). However, a client filing a lawsuit or a disciplinary complaint against his or her attorney does not automatically create a conflict of interest. *Id.* at 811-14. Rather, the trial court has the discretion whether to find a conflict and appoint the defendant new counsel based on the particular facts of the case. *Id.* The concern is that a rule requiring the automatic appointment of new counsel would make it " 'too easy for criminal defendants to get rid of their court-appointed lawyers, delay their trials, or obtain reversals of their convictions.' " *Id.* at 814 (quoting ABA/BNA Lawyers' Manual on Professional Conduct, at 51:406-51:407 (Feb. 28, 1990)); see also *People v. Hardeman*, 203 Ill. App. 3d 482, 490 (1990) ("Inherent in a trial judge's authority to conduct and preside over a criminal trial is the discretion

5

to conclude that a defendant's conduct or pursuit of an otherwise legal right is frivolous and merely an attempt to frustrate the administration of justice.").

¶ 23　Here, the court discussed with defendant his specific complaints against counsel and allowed him to proceed *pro se* for a while.  It appears that most of defendant's complaints related to discovery issues.  While representing himself, defendant was able to review the discovery.  He then moved to have the public defender reappointed.  The court explained that it could not order a specific public defendant to be appointed, that the assignment of an individual attorney to a case was within the purview of the public defender's office, and that defendant's original trial counsel would likely be reappointed.  Defendant responded that he had already written to counsel explaining the case.  After being reappointed, counsel filed a single motion to attempt to resolve all outstanding discovery issues.  It appears that defendant and trial counsel thereafter worked together without major conflict.

¶ 24　We cannot say that the trial court abused its discretion in handling the attorney-conflict issue.  It appears that defendant waived the conflict by agreeing to the reappointment of original trial counsel.  To the extent the court implicitly found that defendant's complaints were either frivolous or had been adequately addressed by his receiving the discovery documents, the court did not abuse its discretion.

¶ 25　The second potential issue is whether the State proved defendant guilty beyond a reasonable doubt.  When faced with an appellate challenge to the sufficiency of the evidence, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *People v. Campbell*, 146 Ill. 2d 363, 374 (1992).

¶ 26    Here, the only contested issue at trial was whether defendant stabbed Garrison in self-defense. Once a defendant raises self-defense, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. *People v. Lee*, 213 Ill. 2d 218, 224-25 (2004). The elements of self-defense are that (1) unlawful force was threatened against a person, (2) that person was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) those beliefs were objectively reasonable. *Id.* (citing 720 ILCS 5/7-1 (West 1998)). If the State negates any one of these elements, the defendant's claim of self-defense fails. *Id.*

¶ 27    Here, the evidence proved that defendant did not act in self-defense. Garrison admitted that he angrily approached defendant. However, according to his testimony, the situation cooled and the parties conversed for a time before the stabbing. He denied striking or threatening defendant. He denied having a weapon. Likewise, both Moore and Brewner testified that after the initial confrontation, the situation cooled down and the parties conversed relatively calmly before defendant abruptly approached Garrison and stabbed him. Neither witness saw or heard Garrison make physical contact with or threaten defendant. Neither saw Garrison with a weapon. Based on this evidence, the jury could reasonably conclude that defendant was not acting in self-defense when he stabbed Garrison.

¶ 28    The third potential issue is whether the trial court improperly prohibited the defense from fully presenting Garrison's history of violence and aggression. Generally, a trial court has discretion to decide whether evidence is relevant and admissible. *People v. Morgan*, 197 Ill. 2d 404, 455 (2001). A victim's violent and aggressive character may be relevant to a self-defense theory in two ways. *People v. Lynch*, 104 Ill. 2d 194, 199-200 (1984). First, the defendant's

7

knowledge of the victim's violent tendencies necessarily affects his perceptions of and reactions to the victim's behavior. *Id.* at 200. Second, evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened. *Id.* The evidence at issue here appears to be of the latter type.

¶ 29    Here, the defense sought to admit evidence of five incidents that allegedly showed Garrison's violent and aggressive tendencies. The court permitted evidence of two such incidents but barred evidence of three others. We agree with OSAD that this decision was proper.

¶ 30    The court barred evidence of a 2011 incident in which Garrison was charged with unlawful possession of a weapon. This ruling was correct because a charge of unlawful possession of a firearm does not show a propensity for violence. *People v. Cruzado*, 299 Ill. App. 3d 131, 137 (1998). The court also barred evidence of incidents that occurred in 2002 and 2005. The court did not abuse its discretion given that the two incidents occurred more than 12 years before the incident that gave rise to this case. See *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 49 (remoteness in time is a valid consideration in determining whether it is reasonable for the trial court to allow the admission of evidence pursuant to *Lynch* (citing *Morgan*, 197 Ill. 2d at 455-57)).

¶ 31    The fourth potential issue is whether the trial court abused its discretion in sentencing. A sentence is entitled to great deference and will not be reversed absent an abuse of discretion. *People v. Gooch*, 2014 IL App (5th) 120161, ¶ 11. Accordingly, we may not reweigh the aggravating and mitigating factors and may not substitute our judgment for that of the trial court merely because we might have weighed those factors differently. *Id.*

¶ 32    Although defendant was sentenced to 10 years' imprisonment, the maximum extended-term sentence for aggravated battery, we agree with OSAD that the trial court did not abuse its discretion. The crime of which defendant was convicted was serious. After the stabbing, Garrison

8

was taken to the hospital where he underwent four hours of surgery. Doctors required 38 staples to close the wound. Garrison remained hospitalized for about a week afterward. Moreover, the stabbing was essentially unprovoked. While Garrison admitted to initially assailing defendant, all of the witnesses agreed that the situation had cooled down before defendant abruptly approached Garrison and stabbed him.

¶ 33    Moreover, the presentence report showed that defendant has an extensive criminal history. In 1994, defendant was convicted of numerous offenses including rape, deviate sexual assault, armed robbery, and home invasion. In 2009, he was convicted of second degree murder. He also had three previous convictions of aggravated battery and served numerous lengthy prison terms. The record does not demonstrate that the trial court considered improper aggravating factors or ignored relevant mitigating factors. Under these circumstances, there is no good-faith argument that the court abused its discretion in sentencing.

¶ 34    The final potential issue is whether the trial court erred in denying the defense motion for a mistrial where the State attempted to introduce the wrong knife into evidence. A court should declare a mistrial only when "an error of such gravity has occurred that the defendant has been denied fundamental fairness such that continuation of the proceedings would defeat the ends of justice." *People v. Nelson*, 235 Ill. 2d 386, 435 (2009). We review the denial of a mistrial only for an abuse of discretion. *Id.*

¶ 35    The trial court did not abuse its discretion here where the mistake did not prejudice defendant and potentially helped his case. Shellenberg testified truthfully that the knife was not the one recovered from defendant's backpack, and the trial court allowed defense counsel to highlight this fact to the jury. As the trial court observed, "[I]t's going to make the police department for Granite City look not so great. *** [I]t's a bonus to your case that you get to

9

impeach them with the fact they brought up the wrong knife, and I'll allow you to do that in cross if you wish." Where the State's sloppiness provided the defense with a potential "bonus" and the court allowed defense counsel to take advantage of this fact in any way he wanted, the court did not abuse its discretion by denying a mistrial.

¶ 36                                              CONCLUSION

¶ 37     Because there is no meritorious issue that could support an appeal, we grant OSAD's *Anders* motion and affirm the judgment of the circuit court of Madison County.

¶ 38     Motion granted; judgment affirmed.