2021 IL App (1st) 182129-U
Order filed: February 5, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-18-2129

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 2719 |
| | ) | |
| RAY ALEXANDER, | ) | Honorable |
| | ) | Brian Flaherty, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed defendant's conviction of aggravated battery with a firearm, finding that the record on direct appeal was incomplete with regard to his claim of ineffective assistance such that the claim is more appropriately raised in a postconviction proceeding and that his 10-year sentence for aggravated battery with a firearm was not excessive.

¶ 2    Following a bench trial, defendant Ray Alexander was found guilty of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2012)) and sentenced to 10 years' imprisonment. On appeal, defendant argues that he was denied effective assistance of counsel at trial and that his sentence was excessive. We affirm.[1]

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this

No. 1-18-2129

¶ 3    On January 12, 2013, defendant shot Orlando Montgomery, during a physical altercation, at the apartment building where both men lived, located at 26 West 29th Street in South Chicago Heights (26 West). Defendant was charged by indictment with attempt first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm.

¶ 4    Prior to trial, defendant filed and later supplemented a "motion to allow inquiry into alleged victim's violent background (re *Lynch*)" (*Lynch* motion). Defendant sought to introduce evidence of Montgomery's aggressive and violent character, pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984), to show that Montgomery was the first aggressor. Specifically, defendant sought to raise a 2007 conviction for misdemeanor battery in Wisconsin, in which Montgomery pled guilty. According to the incident reports, Montgomery punched a man in the face after the man, who was intoxicated, spilled beer on him. Defendant also sought to raise a 2011 arrest for domestic battery in Harvey, Illinois, where Montgomery punched his brother during a verbal dispute. The criminal charges in the 2011 case were later dismissed.

¶ 5    At the hearing on the motion, the State argued against admission of the *Lynch* evidence, stating that there was a question in the 2007 case as to whether or not Montgomery was the initial aggressor, and that "we would be having a mini-trial if that evidence were to be introduced." The State also argued that the relevant Wisconsin witness was beyond service of process. The State further noted that in the 2011 case there was also a question as to whether Montgomery or his brother was the initial aggressor, and that in any event Montgomery's brother was so "uncooperative" that he refused to file charges. Notwithstanding the State's arguments, the trial

appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

- 2 -

court granted the *Lynch* motion, provided that there was a conflict in the evidence regarding the initial aggressor.

¶ 6    The matter was set for trial on July 11, 2017. On that date, defense counsel stated he was not ready for trial and sought a continuance because two of the *Lynch* witnesses from Wisconsin were not available. The trial court stated, "We've been dealing with these Wisconsin people for a long, long time" and noted that it had already given the defense a year of continuances for defendant to obtain the police reports. The trial court granted the defense a final continuance and stated that defense counsel will "have to drive up to Wisconsin to deal with that issue. But I will not accept this excuse again about the Wisconsin witnesses."

¶ 7    At trial, no *Lynch* evidence was presented. There is no indication in the record as to the reasons the *Lynch* witnesses were not called, what steps were taken to procure their presence at trial, or whether defense counsel subsequently drove to Wisconsin and/or contacted the Wisconsin witnesses pursuant to the court's suggestion.

¶ 8    Montgomery testified that on January 12, 2013, he lived in an apartment, at 26 West, with his wife, Crystal Jones; three children; mother-in-law; and brother-in-law. Jones's cousin, Arleatrice Jackson, was visiting her that day at the apartment. Around 9:30 p.m., Montgomery returned home from work and heard loud music coming from defendant's downstairs apartment. Defendant lived with Montgomery's aunt, Charlotte Davis. The music was so loud that the walls were "shattering," and the shelves were falling down. At the request of his mother-in-law, Montgomery went downstairs and knocked on defendant's door.

¶ 9    Defendant, smelling like alcohol and appearing to be intoxicated, answered the door with Davis at his side. Montgomery asked them to turn the music down and testified that defendant was very angry and "obnoxious." During a verbal confrontation, they went outside to the street and a

physical altercation ensued. Defendant pushed Montgomery. Montgomery punched defendant in the face; defendant fell down. Montgomery went back to his apartment without looking back. Jones was upset and the children were crying. Montgomery left to get some air.

¶ 10     As Montgomery was leaving the building, he saw Davis and defendant standing near the door. Defendant was holding a gun in his hand. Montgomery stepped toward defendant and pulled Davis away from defendant. Defendant shot Montgomery in the abdomen. Montgomery then pushed Davis out of the way and moved closer to defendant. Defendant shot Montgomery under the armpit. Montgomery "slammed" defendant to the ground while defendant still had his hands on the gun. Montgomery put his knee to defendant's neck trying to wrestle the gun away. The gun fired three more times, striking Montgomery in each of his hands and defendant in the leg.

¶ 11     After hearing sirens, Montgomery ran up the stairs and defendant fired another shot. When the police arrived, an ambulance took Montgomery to the hospital. He had surgery on his hands and abdomen. One of the bullets lodged near his spine was removed; another, near his ribs, remained at the time of trial. Montgomery identified photographs of the scene and gun.

¶ 12     On cross-examination, Montgomery testified that he did not see any other neighbors complaining about the noise. Montgomery's mother-in-law wanted to call the police, but Montgomery thought it would be easier to talk to defendant. Montgomery had a "good relationship" with defendant, spoke with him on a daily basis. Montgomery denied threatening defendant and Davis and denied shooting defendant.

¶ 13     Jones testified that on the evening of January 12, 2013, she lived at 26 West and heard loud music that was causing the shelves to shake and items to break. Montgomery came home from work around 9:30 p.m. and Jones's mother asked him to go downstairs and ask defendant to turn down the music. Jones and Jackson followed. According to Jones, Montgomery was not angry;

defendant seemed a "little angry." Defendant and Montgomery had a discussion at the door. Montgomery went inside defendant's apartment for approximately 5 to 10 minutes and then came back to the doorway. The confrontation became physical as defendant followed Montgomery outside. Montgomery hit defendant. Montgomery, Jones, and Jackson went back to their apartment.

¶ 14    Montgomery was upset so he decided to take a walk. Jones and Jackson followed, but were a few steps behind. Before making it outside, they heard gunshots and went back to their apartment. They heard four or five gunshots and then silence. Jones and Jackson went back outside and saw defendant lying on the ground. Montgomery was holding him down.

¶ 15    Jackson testified that on January 12, 2013, she was at 26 West and heard loud music. When Montgomery arrived home from work, without a request from his mother-in-law, he went downstairs to talk to defendant about the music. Jackson followed and saw Montgomery and defendant talking in the doorway. Montgomery was not angry; defendant was "a little aggressive," "a little agitated." A verbal altercation ensued and became physical. Jackson saw Montgomery punch defendant but did not know who initiated the physical altercation.

¶ 16    Montgomery, Jones, and Jackson went back upstairs. Montgomery said he was going to take a walk. Jones and Jackson followed, but heard a gunshot and turned around. They heard four to five shots. Jones's mother called the police.

¶ 17    Sergeant Jake Kozinski testified that just before 10 p.m. on January 12, 2013, he responded to a shooting at 26 West with Detective Daniel Vaci. They spoke with Davis and found defendant in the first-floor apartment, with a bloody lip and blood on his pant leg. Defendant was unaware that he had been shot, but when he lifted his pant leg, he had been shot through the calf. The

paramedics arrived. Detective Vaci went into the kitchen and recovered a gun. A third officer, Officer Michael Jones, an evidence technician, was on the scene.

¶ 18    Detective Vaci testified that he responded to the shooting and was directed to get a gun on defendant's kitchen counter. The gun had five spent shells and one live round in the chamber.

¶ 19    Officer Jones testified that on the night of the shooting he was directed to cover the stairwell. He heard Montgomery screaming that he had been shot. Montgomery came downstairs and Officer Jones saw that he was bleeding. Officer Jones helped Montgomery to an ambulance and then collected photographs of the scene.

¶ 20    The parties stipulated that Dr. Jane Lee, a physician, would testify that Montgomery had sustained four gunshot wounds to his abdomen, left armpit, fingers of his right hand, and palm of his left hand. Montgomery underwent surgery to his abdomen and right hand and was released the next day. In addition, Patricia Wallace, a qualified expert in the field of forensic science of firearms identification, would testify that the recovered gun was test-fired and in working condition.

¶ 21    Defendant testified that on January 12, 2013, he was watching football and listening to music in his apartment. Around 10 p.m. he heard a knock on the door, answered it, and saw Montgomery. Montgomery's demeanor was "normal," and they had a discussion about the music. Defendant told him to "find your way home," but Montgomery asked to come in to talk. Defendant invited him inside. Montgomery got angry and started threatening defendant. Defendant told Montgomery to leave. Montgomery started walking away but then punched defendant. Defendant fell to the ground, could not get his balance, and crawled to his room. He grabbed his gun.

¶ 22    Defendant could not see Davis, so he went to the front door, which was still open. Defendant went outside the doorway and Montgomery "jumped" inside defendant's front door. A struggle ensued, while defendant was still holding the gun. The gun went off three times.

Defendant did not intend to kill or harm Montgomery; he wanted Montgomery out of his house. Montgomery "tossed him out of the door."

¶ 23    The police arrived and Montgomery pointed them toward the gun. Defendant was shot in the calf and needed stiches on his lip where he was punched.

¶ 24    On cross-examination, defendant testified that on January 12, 2013, he drank liquor and beer while watching a football game. He "cranked up" the music after the game was over. Defendant had lived in the apartment for a few years and knew Montgomery, his girlfriend's nephew. Defendant and Montgomery had spoken on numerous occasions. Defendant acknowledged that Montgomery did not have a weapon on him.

¶ 25    After defendant was arrested, he was given his *Miranda* warnings and agreed to speak to the detectives and an assistant State's Attorney. Defendant identified a handwritten statement that he signed on January 13, 2013, at the police station. Defendant denied agreeing to have his statement put in writing. He claimed that he did not read it before signing, but that he initialed several corrections. Defendant agreed that the statement reflected that he "got up and immediately ran to his bedroom and got a loaded [gun] from the top drawer of a storage container and ran back out towards the front entrance." Defendant denied at trial that he ran. Defendant then agreed that the statement he signed indicated that Montgomery was near the front door, and that "when [defendant] was about eight feet away from [Montgomery], [defendant] fired a shot towards [Montgomery] and he aimed low." Defendant also agreed that the statement reflected that '[Montgomery] rushed toward him, and [defendant] then fired a second shot at [Montgomery]."

¶ 26    The parties stipulated that defendant had a lip laceration, which required stitches, and that he sustained a gunshot wound to his right calf and had a bullet shrapnel in his leg.

¶ 27    The defense rested.

¶ 28 The trial court found Montgomery credible and that defendant was impeached on significant facts. The court found defendant guilty of aggravated battery with a firearm and aggravated discharge of a firearm and acquitted him of attempt murder.

¶ 29 The trial court denied defendant's motion to reconsider the finding of guilt or, in the alternative, a motion for new trial and proceeded to sentencing.

¶ 30 Prior to the sentencing hearing, the defense submitted a presentence investigation report (PSI) detailing his background. Defendant reported he had a "good" childhood and remained close with his mother. Defendant graduated high school. From 2010 until his arrest, he was employed as a laborer for several labor agencies.

¶ 31 At sentencing, the State acknowledged that defendant had minimal criminal history, but emphasized that he shot Montgomery several times, resulting in serious injuries. The State urged the trial court to impose a sentence that would deter others. Defendant sought the minimum, noting that he had been shot during the incident.

¶ 32 The court reviewed the PSI and the transcripts of the trial. The court stated that it was not considering defendant's criminal history as it was so far in the past. In summarizing the trial, the court noted that it found the State's witnesses credible and that defendant's actions on the day of the shooting were "cowardly." The court emphasized the incident occurred over loud music, noting that all defendant had to do was lower his music. The court took into account that defendant got shot, but stated "you got shot because he was trying to fight you over the gun after you shot him. So that's how it all happened. So I take into consideration you got shot, but you got shot because you're the one that brought the gun."

¶ 33 The court then stated "[t]aking into consideration all of the factors that I need to consider, his conduct threatened serious harm. I do not think based on what I said before that there is a prior

history of delinquency. There is some things that may or may not be you. Whatever it was, I don't care about it. And, again, it's necessary to deter others from committing the same crime." The trial sentenced defendant to 10 years' imprisonment and 3 years mandatory supervised release for aggravated battery with a firearm.

¶ 34    Defendant filed a motion to reconsider sentence, which the trial court denied. Defendant timely appealed.

¶ 35    On appeal, defendant first argues that defense counsel was constitutionally ineffective for failing to introduce *Lynch* evidence at trial, despite having secured a favorable pretrial ruling.

¶ 36    A criminal defendant has the right to effective assistance of counsel. U.S. Const., amend. VI; XIV; Ill. Const. 1970, art. II., § 8; *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Under *Strickland*, a defendant claiming ineffective assistance must show that counsel's conduct "fell below an objective standard of reasonableness," and the conduct prejudiced defendant. *Strickland*, 466 U.S. at 687-88, 692. Defendant must overcome the strong presumption that the challenged action or inaction could have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). To establish the prejudice prong, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36. We review ineffective assistance of counsel claims *de novo*. *People v. Ross*, 2019 IL App (1st) 162341, ¶ 26.

¶ 37    Here, defendant argues that the evidence at trial established that there was a conflict regarding whether he or Montgomery was the initial aggressor and that defense counsel acted unreasonably by failing to introduce the *Lynch* evidence in support of his claim of self-defense, which was allowed pursuant to the pretrial ruling. This evidence included Montgomery's conviction for battery in Wisconsin and arrest for domestic battery against his brother. Defendant

contends that there is a reasonable probability that, but for defense counsel's failure to introduce the *Lynch* evidence, the result of the proceeding would have been different because such evidence would have enhanced his credibility and his testimony that Montgomery was the aggressor and that he acted in self-defense.

¶ 38 The State counters that defendant's claim of ineffective assistance is founded on matters outside the record and is more appropriately raised in a postconviction proceeding. The State cites in support several cases, including *Massaro v. United States*, 538 U.S. 500 (2003), *People v. Bew*, 228 Ill. 2d 122 (2008), *People v. Veach*, 2017 IL 120649, *People v. Kirklin*, 2015 IL App (1st) 131420, and *People v. Winkfield*, 2015 IL App (1st) 130205.

¶ 39 In *Massaro*, the United States Supreme Court addressed whether the failure to raise an ineffective assistance of counsel claim on direct appeal results in procedural default. The Court noted that "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." 538 U.S. at 504-05. The Court reasoned that "[a]pplying the usual procedural-default rule to ineffective-assistance claims would *** creat[e] the risk that defendants would feel compelled to raise the issue [on direct appeal] before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* at 504. In recognizing a preference for deciding ineffective assistance claims on collateral review, the Court reasoned that in a collateral proceeding:

"the defendant 'has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the [postconviction] court hears spoken words we can see only in print and sees expressions

we will never see, and a factual record bearing precisely on the issue is created.'" *Id.* at 506 (quoting *United States v. Griffin*, 699 F.2d 1102, 1109 (11th Cir. 1983)).

¶ 40    In *Bew*, the Illinois supreme court considered whether defense counsel was ineffective for failing to file a motion to suppress. 228 Ill. 2d at 122. The court discussed *Massaro*, held that the record in *Bew* was insufficient to address the issue on direct appeal, and concluded that defendant could raise the issue in a postconviction proceeding in which both defendant and the State would have the opportunity to develop a factual record bearing precisely on the issue. *Id.* at 135.

¶ 41    In *Veach*, the Illinois supreme court considered whether defense counsel was ineffective for stipulating to the admission of recorded statements of the State's witnesses. *Veach*, 2017 IL 120649, ¶ 1. The appellate court had found that the record was inadequate to resolve the issue on direct appeal and affirmed defendant's conviction, noting that defendant could bring his claim in a postconviction proceeding where a factual record could be developed. *Id.* The supreme court reversed and remanded the case to the appellate court, holding that "ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim." *Id.* ¶ 46. As the record contained defense counsel's reason for stipulating to the admission of the recorded statements, the appellate court had erred in finding that the record was insufficient. *Id.* ¶ 51.

¶ 42    In *Kirklin*, we considered whether defense counsel was ineffective for failing to call certain character witnesses as promised in his opening statement. 2015 IL App (1st) 131420, ¶ 132. We recognized that although counsel's assistance may be ineffective when he fails to call a witness as promised during opening statement, his decision not to call the witness may be reasonable if warranted by "unexpected events." *Id.* ¶ 138. We held that the record on appeal was not fully developed to establish "either the reasons of the trial attorney or the motives of the witnesses" and

therefore that the issue could not be resolved on direct appeal. *Id.* We affirmed defendant's conviction and sentence. *Id.* ¶ 140.

¶ 43 In *Winkfield*, we considered whether defense counsel was ineffective for failing to call certain alibi witnesses as promised in his opening statement. 2015 IL App (1st) 130205, ¶ 1. We affirmed defendant's conviction, finding that the record on appeal was inadequate to determine whether counsel's failure was "due to any deficient representation or merely a failure [on the part of the witnesses] to cooperate or appear, or some other unforeseen or unexpected event." *Id.* ¶ 27. We found that disposition of defendant's ineffective assistance claim required inquiry into matters outside the record on direct appeal. *Id.* We held that "[w]hen the four corners of the record is insufficient to address the issue of ineffective assistance of counsel, this court may decline to adjudicate the claim in a direct appeal in favor of addressing it in a proceeding for postconviction relief where matters outside the common law record can be considered." *Id.* ¶ 28.

¶ 44 In the present case, the record on direct appeal is similarly insufficient to address defendant's ineffective assistance of counsel claim regarding counsel's failure to present *Lynch* evidence. Defense counsel secured a pre-trial ruling from the trial court allowing him to introduce *Lynch* evidence regarding Montgomery's prior conviction for misdemeanor battery in Wisconsin in 2007, where he punched a man in the face after the man spilled beer on him, and his 2011 arrest for domestic battery in Illinois when he allegedly punched his brother in the face during a verbal dispute. At trial, though, defense counsel did not present witnesses nor did he question Montgomery about those incidents. The record on appeal gives a *possible* reason for counsel's failure to present the *Lynch* evidence, specifically, that the Wisconsin witnesses were reluctant to come to Illinois to testify, and that Montgomery's brother was uncooperative, refused to file charges against Montgomery, and the criminal charges were dismissed. However, this is mere

speculation as the trial court never held a hearing on the issue of ineffective assistance of counsel. Given the incomplete record on direct appeal regarding counsel's reasoning for failing to present the *Lynch* evidence, we would be required to engage in further speculation and conjecture in determining whether counsel's decision was tactical or the result of ineffectiveness. Our supreme court has held, though, that we cannot resolve a claim of ineffective assistance based on conjecture or speculation. *Bew*, 228 Ill. 2d at 134-35. As the record on appeal is insufficient for us to resolve defendant's claim of ineffective assistance, we decline to adjudicate the claim on direct appeal in favor of considering it in a postconviction proceeding where matters outside the common law record can be considered and a factual basis developed for resolution of the issue.

¶ 45 Next, defendant argues that his 10-year sentence is excessive in light of significant mitigating factors demonstrating his potential for rehabilitation and the sentencing court's improper reliance in aggravation that the offense was committed with a gun, which is a factor inherent in the offense.

¶ 46 In response, the State contends that defendant forfeited these claims for failing to raise these particular issues in his post-sentencing motion. Setting aside forfeiture, the State argues the trial court did not error with respect to sentencing.

¶ 47 In reply, defendant contends that his motion to reconsider the sentence was adequate to preserve the alleged sentencing error, as it argued excessiveness. In the event of forfeiture, defendant argues that his claims are reviewable under either prong of the plain-error doctrine.

¶ 48 Generally, "to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). In the event of forfeiture, we may review defendant's claim under the plain-error doctrine. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). To obtain relief under the plain-error

doctrine, "a defendant must first show that a clear or obvious error occurred. ***. In the sentencing context, a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545 (citations omitted).

¶ 49 We note that, even if we found forfeiture and engaged in plain-error review, we would first need to determine whether any sentencing error occurred. *Thompson*, 238 Ill. 2d at 613. For the following reasons, we find no error with respect to defendant's sentencing and need not address forfeiture in order to affirm the trial court.

¶ 50 Under the Illinois Constitution, the trial court must impose a sentence that balances the seriousness of the offense and the defendant's rehabilitative potential. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In doing so, the court must consider aggravating and mitigating factors including "the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education." *Id.* A trial court need not discuss each relevant factor or articulate the basis for the sentence imposed; it is presumed that the court considered the evidence in imposing the defendant's sentence. *People v. Averett*, 381 Ill. App. 3d 1001, 1021 (2008). Because the trial court is in the best position to weigh these factors, the sentence imposed will not be reversed absent an abuse of discretion. *Id.* The reviewing court "must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and the purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20.

¶ 51     After reviewing the record in this case, we do not find that defendant's sentence was so excessive as to constitute an abuse of discretion. Aggravated battery with a firearm is a Class X felony, which carries a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/12-3.05(a)(1) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012); 730 ILCS 5/3-6-3(a)(2)(ii) (West 2012). Thus, the 10-year sentence was well within the statutory limits and is presumed to be proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 52     The record shows that the trial court read the PSI and trial transcript and considered all of the factors in aggravation and mitigation. Defendant's actions were undoubtedly serious as he shot Montgomery multiple times in response to a request to turn down his music. See *People v. Wilson*, 2016 IL App 141063, ¶ 11 ("The seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing."). The mitigating evidence regarding defendant's lack of criminal history and background did not preclude the court from imposing a sentence four years above the minimum. See *People v. Alexander*, 239 Ill. 2d 205, 214 (2010) (defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense).

¶ 53     Lastly, we reject defendant's contention that the trial court erred when it relied on his use of a gun during the incident, as it was an element of the offense. Generally, a trial court may not consider a factor implicit in the offense as an aggravating factor during sentencing. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004) (citing *People v. Ferguson*, 132 Ill. 2d 86, 96 (1989)). However, a trial court may consider the nature of the offense when imposing a sentence, including the circumstances and extent of each element as committed. *People v. Robinson*, 391 Ill. App. 822, 842 (2009).

¶ 54     Here, one of the elements of the offense that the State had to prove was that defendant discharged a gun. 720 ILCS 5/12-3.05(e)(1) (West 2012). At sentencing, the State noted that

defendant shot Montgomery more than once and the trial court pointed out that Montgomery did not have a weapon and that defendant shot him multiple times. The trial court stated that it took into consideration the fact that defendant got shot in the altercation but noted that he was shot because he brought the gun to the fight. The trial court did not improperly rely on a factor implicit in the offense when sentencing defendant. Rather, the trial court was describing the nature and circumstances of defendant's actions; that is the number of times Montgomery was shot and that defendant would not have been shot but for the fact that he brought the weapon.

¶ 55    Therefore, we cannot say that the trial court abused its discretion in imposing a 10-year sentence. As we find no error in sentencing, we need not discuss whether either prong of plain error review applies. *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40.

¶ 56    Affirmed.