2025 IL App (1st) 232498-U

No. 1-23-2498

Order filed March 31, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 60106 |
| | ) | |
| BRIAN VANDOLAH, | ) | Honorable |
| | ) | Timothy Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm defendant's convictions for aggravated domestic battery over his contentions that the State failed to negate his claim of self-defense and that trial counsel rendered ineffective assistance by not presenting evidence of the complaining witness's violent character, evidence of defendant's neurological issues, or a defense-of-dwelling affirmative defense.

¶ 2     Following a bench trial, the trial court found defendant Brian Vandolah guilty of aggravated domestic battery. On appeal, defendant contends that the State failed to disprove that he acted in self-defense and that trial counsel rendered ineffective assistance by failing to present

evidence of the complaining witness's violent character, evidence of defendant's neurological issues from prior shooting injuries, and a defense-of-dwelling affirmative defense. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State proceeded to trial on one count of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a) (West 2020)), four counts of aggravated domestic battery (*id.* §§ 12-3.3(a), (a-5)), and seven counts of aggravated battery (*id.* §§ 12-3.05(a)(1), (a)(4), (f)(1)). The charges arose from an altercation between defendant and his father Gregory Young on May 28, 2021.

¶ 5                                    A. *Lynch* Motion

¶ 6      Prior to trial, defendant filed a motion to admit certain evidence pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984), and Illinois Rules of Evidence 404(a)(2) and 405(b)(2) (eff. Jan. 1, 2011).[1] Specifically, defendant sought to introduce that (1) on January 20, 2016, Young was arrested for domestic battery for allegedly punching his wife, Pamela Wright-Young, causing her to lose four teeth and suffer a torn neck ligament and (2) Young's stepson, Adeyemi Scott, had witnessed Young become violent when under the influence of alcohol or drugs. Defendant attached as an exhibit to his *Lynch* motion his own typewritten statement, sworn to before a notary, setting out his version of the May 28, 2021, incident that gave rise to this case. Defendant's statement did not address either of the incidents he sought to introduce as *Lynch* evidence. However, defendant

---

[1]*Lynch* holds that "when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor." *Lynch*, 104 Ill. 2d at 200. Similarly, Illinois Rule of Evidence 404(a)(2) provides that "evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused" is admissible as an exception to the general rule against character evidence. Ill. R. Evid. 404(a)(2) (eff. Jan. 1, 2011). Rule 405(b)(2) provides that "when the accused raises the theory of self-defense and there is conflicting evidence as to whether the alleged victim was the aggressor, proof may also be made of specific instances of the alleged victim's prior violent conduct." Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011).

attested that Young becoming violent "was typical when he [was] drunk and high and consequently [defendant] was not super alarmed" during the May 28, 2021, incident.

¶ 7 The State opposed the admission of *Lynch* evidence, arguing that defendant could not establish self-defense because the evidence would show that he was the aggressor. The State also contended that the proffered *Lynch* evidence was unreliable because Young's alleged conduct did not result in criminal charges or convictions.

¶ 8 The trial court granted defendant's *Lynch* motion with certain conditions. The court prohibited defendant from eliciting that Young was arrested as a result of the January 2016 incident because that arrest did not result in charges or a conviction. However, the court allowed defendant to call witnesses to testify to the facts of that incident. In addition, the court explained that the admissibility of the incident involving Adeyemi Scott would depend on the specificity defendant's witnesses could provide about that incident.

¶ 9 B. Trial

¶ 10 1. The State's Case

¶ 11 Gregory Young is defendant's father. Young testified that he lived on the 10600 block of South Lafayette Avenue in May 2021 and was 62 years old at the time.

¶ 12 On the evening of May 28, 2021, Young was home alone watching television. Defendant arrived between 10:30 p.m. and 11:00 p.m. and drank gin with Young; they each had two or three shots. When defendant began to leave, he and Young got into an argument, although Young could not remember what they said. Defendant grabbed Young by the throat and Young grabbed defendant by the throat in response. Defendant headbutted Young and then punched him in the face. Young briefly lost consciousness at some point. Young fell to the ground and defendant

pressed a shovel against his neck, which prevented him from breathing. According to Young, this part of the altercation occurred in his apartment building's front vestibule. Young "kicked the shovel off" his neck, which injured his ankle, then "skirted back into [his] apartment." He could not remember how he got into his apartment, but he may have "scooted back *** on [his] back." Young looked in a mirror and saw that his face was "pummelled [*sic*]," his eye sockets and nose were broken, and his face was bleeding.

¶ 13    Young then went upstairs toward defendant's apartment while telling defendant he "was going to kill him." Defendant's apartment door was locked and defendant would not open it. Young banged on the door with a closed fist and then went back downstairs. Defendant followed him downstairs and struck the top of Young's head and the side of his face with the shovel. Young went to his living room, took a photograph of his injuries, and texted it to his wife and defendant. Defendant came downstairs again, grabbed Young's phone, and broke it. Defendant stayed with Young in the living room and did not leave the apartment building at any point. Defendant offered to take Young to the hospital, but Young refused. Young denied that he called defendant's cell phone or left voicemails for him during the early morning hours of May 29, 2021.

¶ 14    That afternoon, Young's brother transported him to Roseland Hospital. Young suffered fractures of both eye sockets, a broken nose, a broken ankle, and bleeding in his brain. He underwent surgery to treat those injuries and was hospitalized for six days. This incident also caused Young to experience memory loss.

¶ 15    Young identified photographs of his injuries that a police officer took, and the State moved them into evidence. The photographs depict bruising, swelling, and cuts around Young's nose and

both of his eyes. One photograph depicts him with crutches and wearing a medical boot on his lower right leg.

¶ 16    Young testified that this was "not the first incident [he] had with [defendant]. In fact, this [was] the third." According to Young, defendant experienced mental and emotional issues every year near the anniversary of an incident in which he was shot. Defendant attacked Young in 2019 or 2020, and a second time in which he grabbed Young by the neck and threw him down the stairs.

¶ 17    Chicago police officer Christopher Murrah testified that he met with Young at Roseland Hospital on the afternoon of May 29, 2021. Young had been "severely beaten" and suffered head and facial injuries including swelling around the eyes and bleeding from a wound caused by a shovel. An evidence technician photographed Young at the hospital.

¶ 18    The parties stipulated that Dr. Vivek Sehgal treated Young at Roseland Hospital on May 29, 2021. The stipulation described Young's head injuries as documented by a CT scan, including fractures of the nasal bones, orbitals, cheek bones, and jaw. Young was transferred to the University of Chicago Hospital for further treatment.

¶ 19                                    2. Defendant's Case

¶ 20    Defendant testified that he was 45 years old at the time of trial. In May 2021, he lived at Young's home on the 10600 block of South Lafayette. The building had separate upstairs and downstairs apartments connected by a stairway and a vestibule. Defendant lived in the upstairs apartment; the downstairs apartment was vacant but furnished.

¶ 21    On the night of May 28, 2021, defendant came home and went to his apartment to change clothes. At approximately midnight, defendant saw Young's car arrive and went downstairs to meet him. Young "already had liquor downstairs, which is normal for him" and defendant

suspected that Young had been using cocaine. Defendant asked Young why he had arrived in the middle of the night and Young told him to mind his own business. When defendant tried to leave, Young grabbed him by the neck, swore at him, and ordered him to sit down. Young and defendant "got into a tussle" and defendant "got [Young] to the ground." Defendant again tried to leave, but Young punched him in the back of the head twice. Defendant turned around and "ha[d] a fistfight" with Young for approximately one minute. Defendant then left the building and drove away.

¶ 22    Young called defendant's cell phone and threatened to burn his belongings on a barbecue grill, "which was believable because it's something he's done to other people before." At trial, defendant identified a voicemail Young left on defendant's phone after defendant left the apartment building and moved it into evidence. The voicemail records Young saying:

> "I love you to death, man, I promise you. Step foot in my presence. Come on home. You are welcome. Please come on home. I promise you. I promise you I will be either living tomorrow or you will. Love you with everything that I am. Please come home."[2]

¶ 23    Defendant also identified a log of calls to and from his cell phone on May 29, 2021, and moved it into evidence. The log reflects eight calls between defendant and Young between 1:04 a.m. and 1:29 a.m.

¶ 24    Defendant returned home out of concern for his belongings. He went to his apartment upstairs and locked and barricaded the door. Young was downstairs "calling [defendant] names and saying, hey, this is not over yet." Approximately 10 to 15 minutes later, Young came upstairs, tried to kick defendant's apartment door in, and urinated on the door. Defendant opened the door

---

[2]Defendant's reply brief claims that, in this voicemail, Young "threaten[ed defendant] by stating that 'one of them will be dead before tomorrow.' " We do not hear those words in the voicemail in the record on appeal.

and saw Young holding a knife. The apartment door opening outward caused Young to fall down the stairs and drop the knife. Young picked up a shovel at the bottom of the stairs, walked up the stairs, and swung the shovel at defendant "a couple times" but did not hit him. Defendant grabbed the shovel from Young's hand and Young fell down the stairs again. Young then brandished a screwdriver and charged up the stairs toward defendant. Defendant hit Young in the head with the shovel twice. Young went back downstairs while threatening to kill defendant. Defendant returned to his apartment and barricaded the door. At approximately 4:00 a.m., defendant went downstairs to check on Young. He saw Young bleeding and offered to take him to the hospital, but Young refused.

¶ 25    Defendant testified that he did not call 911 because "we don't do that in our family." When the court asked him to explain that answer, defendant testified as follows:

"Throughout my years, this is stuff that my father has pulled before, it was just the first time that it happened to me. None of my other siblings ever called the police on him. His first wife never had him arrested, his second wife did, but we never did that to him because he had always made threats that if he went to jail, the police will have to kill him, he ain't going to jail, stuff like that. It was just dependent on us to let him do what he do. He had been doing it before I was born."

¶ 26                              3. The Trial Court's Ruling

¶ 27    The trial court found defendant guilty on all counts except attempted murder. The court found Young credible even though he was "not completely conversant with respect to all of the particulars regarding *** how [his injuries] were inflicted upon him." The court did not address self-defense specifically, but it found defendant's testimony "fantastical" and "believe[d] virtually

none of it." The court acquitted defendant of attempted murder because the State did not prove his specific intent to kill Young.

¶ 28                    C. Posttrial Motions and Sentencing

¶ 29    Defendant filed a motion for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt because "his testimony was indicative of self-defense." He also contended that Young was not credible due to his "denial of phone calls made to the [d]efendant requesting him to come back, [claims regarding his] ability to maneuver with alleged injuries, threat to kill the [d]efendant and being under the influence of alcohol or other substances." The trial court denied defendant's motion.

¶ 30    At the sentencing hearing, the court merged the counts into one count of aggravated domestic battery premised on Young's injuries and one count of aggravated domestic battery premised on strangulation. The court sentenced defendant to nine years in prison on each count.[3] Defendant filed a motion to reconsider the sentence, which the trial court denied.

¶ 31    Defendant timely appealed.

¶ 32                              II. ANALYSIS

¶ 33    On appeal, defendant contends that the evidence was insufficient to prove him guilty and that trial counsel rendered ineffective assistance.

¶ 34                    A. Sufficiency of the Evidence

---

[3]Both parties' briefs claim that the trial court sentenced defendant to two consecutive nine-year terms of imprisonment for a total of 18 years in prison. However, the mittimus indicates that the sentences run concurrently and states "SENTENCE ON COUNTS 2 AND 5 ARE 9 YEARS TOTAL IN IDOC." In its oral sentencing ruling, the court stated that "the sentence of this Court will be nine years in the Illinois Department of Corrections, plus four years mandatory supervised release." Defendant does not raise this issue on appeal, so we will not otherwise address it.

¶ 35    Defendant first argues that the State did not prove him guilty beyond a reasonable doubt because he established an affirmative defense of self-defense, which the State failed to negate.

¶ 36    Defendant was convicted of aggravated domestic battery premised on great bodily harm and strangulation. Relevant here, a person commits domestic battery if he knowingly and without legal justification causes bodily harm to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2020). Domestic battery becomes aggravated domestic battery when the defendant causes great bodily harm to (*id.* § 12-3.3(a)) or strangles the victim (*id.* § 12-3.3(a-5)).

¶ 37    Defendant does not challenge the State's proof of any of the elements of aggravated domestic battery. Rather, he contends that he established self-defense and the State failed to disprove it. A defendant may raise self-defense as an affirmative defense to aggravated domestic battery. *People v. Gray*, 2017 IL 120958, ¶¶ 3, 13, 50. Once a defendant raises self-defense, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* ¶ 50. The elements of self-defense are (1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable. *Id.*; 720 ILCS 5/7-1 (West 2020). If the State disproves any of these elements, the defendant's claim of self-defense fails.[4] *Gray*, 2017 IL 120958, ¶ 50.

---

[4] Defendant also argues that his conduct constituted a defense of his dwelling pursuant to section 7-2(a) of the Criminal Code of 2012 (720 ILCS 5/7-2(a) (West 2020)). Defendant did not raise that affirmative defense at trial, so he cannot raise it for the first time on appeal. See *People v. Shepherd*, 2020 IL App (1st) 172706, ¶¶ 16-17 ("A defendant forfeits an affirmative defense by failing to make it in the trial court."); see also *People v. Bardsley*, 2017 IL App (2d) 150209, ¶¶ 17-23; but see *People v. Wiggen*, 2021 IL App (3d) 180486, ¶¶ 16-18 (finding no forfeiture of an affirmative defense not raised at trial when raised as a challenge to the sufficiency of the evidence on appeal). However, we will consider

¶ 38    In evaluating a claim of self-defense, the factfinder assesses the credibility of the witnesses, the weight to give their testimony, and the inferences to be drawn from the evidence, and also resolves conflicts or inconsistencies in the evidence. *Id.* ¶ 51. On review, we determine whether, viewing the evidence in the light most favorable to the State, any rational trier or fact could have found beyond a reasonable doubt that the defendant did not act in self-defense. *Id.*

¶ 39    At trial, there was no dispute that defendant struck Young in the head with a shovel multiple times, causing severe injuries. Defendant contended that he did so in self-defense. The central dispute at trial was whether defendant or Young was the aggressor, which was ultimately a credibility contest. Young testified that defendant was the aggressor; he escalated a verbal argument by grabbing Young's throat and headbutting him. Defendant then punched Young in the face, knocking him to the ground, and pressed a shovel against his neck such that he could not breathe. Although Young's description of the order of events was not entirely clear, he was clear that defendant was the initial aggressor. When asked, "who initiated the punching?" Young responded, "My son initiated it." Moreover, Young's testimony established that, after the first altercation ended and the two men retreated to their respective apartments, defendant voluntarily left his apartment, went downstairs to Young's apartment, and struck him in the head with a shovel. Young's testimony, which the trial court accepted as true, negated the second element of self-defense because it established that defendant was the aggressor throughout this incident.

¶ 40    By contrast, defendant claimed that Young was the aggressor. According to defendant, Young grabbed him by the neck and punched him in the back of the head as he was trying to leave.

---

defendant's claim that trial counsel rendered ineffective assistance by not presenting a defense-of-dwelling theory.

When defendant retreated to his apartment, Young repeatedly tried to attack him in the doorway with a knife, a shovel, and a screwdriver before defendant finally struck Young with the shovel. No eyewitnesses or other evidence corroborated or contradicted either man's account of who was the aggressor. The trial court found Young credible and defendant not credible, and we must defer to those credibility determinations. See *People v. Little*, 2018 IL App (1st) 151954, ¶ 43 ("unless they are clearly irrational, we honor the trial court's determinations about the relative credibility of the witnesses.") (citing *People v. Wright*, 2017 IL 119561, ¶ 70). Therefore, we accept the trial court's conclusion that defendant was the aggressor, which negated his claim of self-defense. See *Gray*, 2017 IL 120958, ¶ 50.

¶ 41    Defendant's argument on this point is based entirely on accepting his version of events as true. His opening brief expressly asks this court to reevaluate the witnesses' credibility. Defendant argues that the trial court's "finding that Young's version of the events w[as] credible where Young was impeached at trial, was error" and that "the trial court's decision to believe 'virtually none' of [defendant's] testimony was patently incorrect because his version was a more plausible account of the incident." But "it is not our function to reweigh the evidence or retry the defendant; rather, it is the role of the finder of fact to assess the credibility of the witnesses and the weight to be accorded to their testimony." See *People v. Wiley*, 165 Ill. 2d 259, 297 (1995); see also *People v. Jones*, 2023 IL 127810, ¶ 28 ("When faced with a challenge to the sufficiency of the evidence, it is not this court's function to retry the defendant."). We decline defendant's invitation to reverse the trial court's credibility findings. Accordingly, we affirm defendant's convictions over his challenge to the sufficiency of the evidence.

¶ 42                    B. Ineffective Assistance of Counsel

¶ 43 Defendant also contends that trial counsel rendered ineffective assistance by failing to present additional evidence in support of his claim of self-defense. Specifically, he argues that counsel should have presented *Lynch* evidence of Young's violent character, as well as evidence that defendant's head injuries from prior shootings caused him to suffer epileptic seizures and affected his perception of danger. Defendant also contends that counsel should have presented a defense-of-dwelling theory in addition to his claim of self-defense.

¶ 44 To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that (1) counsel's performance was objectively unreasonable and (2) there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance, *i.e.*, prejudice. *People v. Patterson*, 2014 IL 115102, ¶ 81. We review claims of ineffective assistance of counsel *de novo*. *People v. Webb*, 2023 IL 128957, ¶ 23.

¶ 45                                          1. *Lynch* Evidence

¶ 46 Defendant argues that trial counsel rendered ineffective assistance by failing to present the *Lynch* evidence the trial court indicated it would admit when it ruled on defendant's pretrial motion.

¶ 47 When a defendant asserts self-defense, evidence of the victim's violent character is admissible to establish who was the aggressor. *Lynch*, 104 Ill. 2d at 200. *Lynch* evidence may support a claim of self-defense by (1) showing that the defendant's knowledge of the victim's aggressive and violent character affected his perception of and reaction to the victim's actions or (2) supporting the defendant's version of events where there are conflicting accounts. *People v. Morgan*, 197 Ill. 2d 404, 454 (2001).

¶ 48 In general, decisions about which witnesses to call and what evidence to present are matters of trial strategy that do not support a claim of ineffective assistance. *People v. White*, 2021 IL App (1st) 170903, ¶ 50 (citing *People v. Custer*, 2019 IL 123339, ¶ 39). In some circumstances, counsel may render ineffective assistance if he fails to call certain character witnesses, but the decision not to call such witnesses may be reasonable if warranted by "unexpected events." *People v. Kirklin*, 2015 IL App (1st) 131420, ¶ 138.

¶ 49 If the record is not developed enough to establish counsel's reasons for not calling the witnesses at issue, then on direct appeal, we cannot resolve a claim of ineffective assistance related to that decision. *Id.* Similarly, if the record is inadequate to determine whether counsel's failure to call witnesses was "due to any deficient representation or merely a failure [on the part of the witnesses] to cooperate or appear," we cannot decide the ineffective assistance claim and must affirm the defendant's conviction. *People v. Winkfield*, 2015 IL App (1st) 130205, ¶¶ 27-28. "When the four corners of the record [are] insufficient to address the issue of ineffective assistance of counsel, this court may decline to adjudicate the claim in a direct appeal in favor of addressing it in a proceeding for postconviction relief where matters outside the common law record can be considered." *Id.* ¶ 28. However, this is not a "broad-sweeping categorical" bar to considering ineffective assistance claims on direct appeal; rather, "reviewing courts in Illinois should carefully consider each ineffective assistance of counsel claim on a case-by-case basis." (Internal quotation marks omitted.) *People v. Veach*, 2017 IL 120649, ¶ 48.

¶ 50 The record before us is insufficient to evaluate this claim of ineffective assistance. Prior to trial, defense counsel obtained a ruling that he could present *Lynch* evidence by calling witnesses who could testify to the incidents in which Young was allegedly violent toward Pamela Wright-

Young and Adeyemi Scott. But at trial, counsel did not present any such witnesses. The record is silent as to why counsel did not present *Lynch* evidence. After defendant finished testifying, the court asked if he "wish[ed] any other witnesses called on [his] behalf." He said "no," and the parties proceeded to closing arguments without further discussion. Defendant did not raise this issue in his posttrial motion, so posttrial proceedings do not shed any light on why counsel did not present *Lynch* evidence. Moreover, we do not know whether any *Lynch* witnesses were available and willing to testify, or how they would have testified if they were available. Any attempt to resolve this ineffective assistance claim on direct appeal would lead to improper speculation about whether counsel chose not to call *Lynch* witnesses (as opposed to the witnesses simply being unavailable), and if so, his reasons for that decision.

¶ 51    *People v. Alexander*, 2021 IL App (1st) 182129-U, guides our reasoning.[5] In that case, defense counsel obtained a pretrial ruling admitting *Lynch* evidence of the victim's 2007 conviction for battery and 2011 arrest for domestic battery but did not present that evidence at trial. *Id.* ¶ 44. The record on appeal suggested only a "*possible* reason for counsel's failure to present the *Lynch* evidence, specifically, that [some *Lynch*] witnesses were reluctant to come to Illinois to testify, and that [another *Lynch* witness] was uncooperative, refused to file charges against [the victim], and the criminal charges were dismissed." (Emphasis in original.) *Id.* However, that was "mere speculation as the trial court never held a hearing on the issue of ineffective assistance of counsel." *Id.* This court declined to adjudicate the defendant's ineffective assistance claim "in favor of considering it in a postconviction proceeding." *Id.* In this case, the record does not even hint at counsel's reasons for not presenting *Lynch* evidence at trial. Therefore,

[5]We cite *Alexander* as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

as in *Alexander*, we cannot resolve this ineffective assistance claim on direct appeal. Defendant may be able to raise this issue in a postconviction petition where matters outside the record can be developed and properly considered. See *People v. Talbert*, 2018 IL App (1st) 160157, ¶ 53.

¶ 52    We acknowledge that the record contains sentencing mitigation letters from defendant's stepson Adeyemi Scott, daughter Brieanna Williams, mother Susanne White, stepbrother Michael Turks, sister Ronnetta Rockamore, the mother of his children Galynese Williams, and friend BreeAn Mannie. Some of these witnesses claimed that Young becomes violent when he drinks or uses drugs. However, none of them indicated they were willing and able to testify at trial. These posttrial mitigation letters do not provide a sufficient basis for us to determine whether and why counsel chose not to present *Lynch* evidence at trial.

¶ 53    Defendant argues that he could have testified about the two incidents described in his *Lynch* motion. The record does not support that claim. There is no indication that defendant witnessed either of the incidents alleged in the *Lynch* motion. On the contrary, defendant's sworn statement attached to that motion did not claim that he knew anything about the facts of those incidents. It included only a general claim that Young "typical[ly]" became violent when he used drugs or alcohol.[6] Accordingly, we affirm defendant's convictions over his claim of ineffective assistance of counsel related to *Lynch* evidence.

¶ 54                             2. Defendant's Brain Injury

---

[6]We note that, in response to the court's questioning about why he did not call 911, defendant explained that Young had a history of violence with family members who usually did not call police on him. We do not suggest that the court considered the allegations of the *Lynch* motion as trial evidence, but the trial court did hear some evidence that Young had a history of violence toward his family members when he used drugs or alcohol.

¶ 55    Defendant also argues that "counsel should have elicited testimony from [him] that [he] is epileptic due to a brain injury he sustained during a robbery, when [he] was shot in the head while complying with the robber."

¶ 56    Defendant does not address the objective reasonableness prong of *Strickland* with respect to this argument. Therefore, this claim of ineffective assistance fails. See *Veach*, 2017 IL 120649, ¶ 30 (A defendant must satisfy both prongs of the *Strickland* test to establish ineffective assistance of counsel). Furthermore, trial counsel did elicit evidence of defendant's brain injury. On cross-examination, Young testified that defendant suffered from seizures due to bullet fragments in his brain from two incidents in which he was shot in the head. Because trial counsel introduced at least some of the evidence defendant claims was omitted, defendant has not established prejudice under *Strickland*. Accordingly, we reject this claim of ineffective assistance of counsel.

¶ 57                                   3. Defense-of-Dwelling

¶ 58    Finally, defendant contends that counsel was ineffective for not arguing a defense-of-dwelling theory in addition to his claim of self-defense. "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling." 720 ILCS 5/7-2(a) (West 2020). Counsel's decision as to which theory of defense to present is generally a matter of trial strategy, and that decision cannot serve as a basis for an ineffective assistance claim. *People v. Morris*, 2013 IL App (1st) 110413, ¶ 74 (citing *People v. Enis*, 194 Ill. 2d 361, 381 (2000); *People v. Smith*, 195 Ill. 2d 179, 188 (2000)).

¶ 59    We find that defendant has failed to establish prejudice with respect to this claim of ineffective assistance. Prejudice exists when there is a "reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel had argued a defense-of-dwelling theory, the trial court likely would have rejected it for essentially the same reasons it rejected defendant's self-defense theory. That is, presenting a defense-of-dwelling legal theory would not have changed the trial court's factual findings that Young's version of events was credible and defendant's was not. See *Wiggen*, 2021 IL App (3d) 180486, ¶¶ 16, 21 (when evaluating a defense-of-dwelling theory, a reviewing court will not substitute its judgment for that of the trier of fact in determining witness credibility). According to Young, defendant never defended his dwelling, *i.e.*, his upstairs apartment. Rather, defendant went into his apartment after the altercation in the vestibule. Young did threaten to kill defendant and pounded on his apartment door, but defendant did not use force at that point. Rather, *after* Young went back downstairs, defendant voluntarily left his own apartment, went downstairs to Young's dwelling, and struck him in the head with a shovel. Defendant could not have reasonably believed that such conduct was necessary to prevent or terminate Young's unlawful entry into, or attack upon, defendant's dwelling. See 720 ILCS 5/7-2(a) (West 2020).

¶ 60    Moreover, even defendant acknowledged that his apartment door was closed, locked, and barricaded, and Young could not open it. Defendant had to voluntarily open the apartment door for Young to present any threat to him. Defendant's testimony on this point undermined any defense-of-dwelling theory his counsel might have presented, so he cannot establish ineffective assistance of counsel. Accordingly, we reject this claim of ineffective assistance.

¶ 61                                    III. CONCLUSION

- 17 -

¶ 62    For the foregoing reasons, we affirm defendant's convictions for aggravated domestic battery.

¶ 63    Affirmed.